Stewart, J.
The question presented to us is stated by plaintiff to be:
*568 “Is redress of tortious acts of a partnership, in the pursuit of its business, available^ to a minor whose father is a member thereof?”
Defendant states the questions to be:
“1. May a minor child bring a tort action against a partnership of which his father is a member?
“2. May a partnership be regarded as a legal entity in a tort action?”
In this opinion, the term, tort, shall mean personal tort, unless otherwise designated.
In the courts below the cause seems to have been argued upon the assumption that an unemancipated minor child may not maintain a tort action against his father, and the decisions below seem to have hinged upon the question whether, where the parent is a member of a partnership, it may properly be sued in tort by the minor child upon the theory that it is a legal entity apart from the partners.
The Common Pleas Court entered judgment for defendant upon the pleadings, the inference from which is that the court considered that, although the negligence claimed by plaintiff was that of the partnership, the father was a partner, and, since the liability of each partner was joint and several, any judgment recovered against the partnership would become a liability of the father.
The Court of Appeals reversed the judgment of the trial court, upon the theory that “the rule inhibiting the maintenance of an action in tort by an unemancipated child against its parent should not obtain on this record as a matter of law. ’ ’
In oral argument in this court, plaintiff apparently abandoned the partnership entity theory and frankly and candidly presented the case upon the simple question as to the right of an unemancipated minor child to maintain an action in tort against his father in his business or vocational capacity.
*569 At common law a wife cannot maintain an action in tort against her husband. The theory of this doctrine is that husband and wife are one and that such an action would disrupt their relationship and destroy all harmony between them. However, the common law does not apply that doctrine as between a parent and his unemancipated child.
It was not until the case of Hewlett v. George, Exr. (1891), 68 Miss., 703, 9 So., 885, 13 L. R. A., 682, that the doctrine was declared in this country which denied an unemancipated infant the right to maintain a tort action against his parent. In that case the child complained that she had been wrongfully imprisoned in an insane asylum by her mother. Upon the ground that such an action disturbs the domestic peace and harmony of the family and is contrary to public policy, the court held that such an action can not be maintained.
The rule formulated in that case has been generally followed, but of late has been viewed with suspicion and has been limited.
The rule has been applied in Minnesota to the extent that a child cannot recover against a partnership, composed of his father and another, for the negligence of his father in driving an automobile owned by the partnership and operated in its business, even though the partnership carried liability insurance, upon the theory that since there is no liability of the father there is no liability of his partner, as a member of the partnership, and, therefore, no liability of the insurer. Belleson v. Skilbeck (1932), 185 Minn., 537, 242 N. W., 1.
The rule denying liability in tort in an action by an unemancipated child against his parent has met -vidth violent disagreement in cases which support it.
In Small v. Morrison (1923), 185 N. C., 577, 118 S. E., 12, 31 A. L. R., 1135, Chief Justice Clark in a dis *570 senting opinion reviewed the history and reason of the rule and the fallacy of its application under changed conditions, and in Wick v. Wick, 192 Wis., 260, 212 N. W., 787, 52 A. L. R., 1113, which adhered to the rule of nonliability of the parent, one of the justices wrote a vigorous dissent.
The rule of nonliability was followed in New York in Sorrentino v. Sorrentino (1928), 248 N. Y., 626, 162 N. E., 551, without a written opinion and with Chief Judge Cardozo and two of his associates dissenting.
In Worrell, d. b. a. Blue Ridge Bus Lines, v. Worrell (1939), 174 Va., 11, 4 S. E. (2d), 343, the court in a well considered case narrated the history of the rule, and criticized it as follows:
“Support for the rule is sought on the suggested analogy between an action by a wife against her husband for personal injury, and an action by a child against its parent for a personal tort committed by the parent. * * *
“We do not think that the suggested analogy of husband and wife to that of parent and child affords support for the rule. The distinction is clear. The relation of husband and wife is created by law, that of parent and child by nature. While at common law, and except as changed by statute, there is a conception of the legal unity of husband and wife, neither at common law nor under our statute is there a conception of the legal identity of parent and minor child, either in their persons or in their property rights. * * *
“In later years, economic, social and legislative changes have caused a judicial reaction to the earlier views. Modern methods of business, new or enlarged occupational capacities and the advent of the automobile and liability indemnity insurance have placed the parties in a different position. Therefore, the effect of the earlier decisions must be considered in relation *571 to the occasion, facts and laws upon which they were based. A correct determination of each case must necessarily depend upon its facts and circumstances and the law applicable thereto. Rules of thumb must give way to rules of reason. ’ ’
In the Worrell case the plaintiff, a minor daughter, brought an action against her father, a common carrier by bus. The plaintiff claimed damages for personal injuries resulting from the negligent operation of the bus. It was contended that the action could not be maintained against the parent. However, the court held that, since it was compulsory in Virginia for a common carrier to carry liability insurance and since plaintiff’s father would be indemnified for any damages recovered by the daughter, the reason for the rule denying liability entirely disappeared and therefore the rule could not prevail.
The court said:
“It is true that the, issuance of an insurance policy creates no cause of action where no cause of action exists in the absence of insurance. The existence of insurance has no effect upon the merits of the cause of action. The merits of the action depend upon culpability, from whence may arise liability. It is for these reasons that evidence of insurance is not permitted to go before a jury in Virginia. Liability insurance, while it does not, therefore, affect the merits of the cause of action against the insured, does lessen the effect of the liability on the wrongdoer. In considering the third assignment of error, we are not dealing with the cause of action, but with the question of immunity from liability for acts constituting culpability. ’ ’
In Dunlap v. Dunlap (1930), 84 N. H., 352, 150 A., 905, 71 A. L. R., 1055, a child was permitted recovery against his parent for injuries sustained while in the employ of his father as a workingman. The court said that since the father paid premiums on employer’s li *572 ability insurance there were removed the elements which were usually held to justify the application of the rule favoring the immunity of the parent.
In Lusk v. Lusk (1932), 113 W. Va., 17, 166 S. E., 538, a child was injured while a passenger on a bus owned and operated by her father under a contract with the board of education to transport children to and from school. Under the law of West Yirginia the father was required to carry liability insurance. To the defense that a minor child could not maintain an action against her father, the court said:
“* * * But a different situation arises where the parent is protected by insurance in his vocational capacity. * * *
“When no need exists for parental immunity, the court should not extend it as a mere gratuity. Without such an extension, nothing stands in the way of this action. It is familiar law that a child may bring to account the parent for wrongful disposition of the child’s own property. It must not be said that courts are more considerate of the property of the child than of its person (when unaffected by the family relationship).”
Although the New York courts recognize the immunity of a parent against a tort action by an unemancipated child, it has been decided in that state that an unemancipated child can recover for tortious injuries against his unemancipated sister. Rozell, an Infant, v. Rozell, an Infant, 281 N. Y., 106, 108, 22 N. E. (2d), 254, 123 A. L. R., 1015.
In Cowgill, Admr., v. Boock, Admr. (1950), 189 Ore., 282, 218 P. (2d), 445, the court held that an unemancipated child may maintain an action against his parent for damages for a wilful tort. See Mahnke v. Moore (Md.), 77 A. (2d), 923.
Although the courts of North Carolina adhere to *573 the rule of the immunity of the parent from a tort action by his unemancipated child, it has been held that such a child may maintain an action against the employer of his father where the child was injured by the negligence of his father within the scope of his employment, although no action can be maintained against the father. Wright v. Wright (1948), 229 N. C., 503, 50 S. E. (2d), 540.
In the same state it has been held that an unemancipated child may maintain an action in tort against a corporation of which his parents owned one-half of the outstanding stock. Foy v. Foy Electric Co. (1949), 231 N. C., 161, 56 S. E. (2d), 418.
The Supreme Court of Pennsylvania has decided that an unemancipated child may maintain an action against his mother for the death of such minor’s father allegedly resulting from the mother’s negligent operation of an automobile. Minkin v. Minkin (1939), 336 Pa., 49, 7 A. (2d), 461.
"We have cited the foregoing authorities solely for the purpose of demonstrating the present-day tendency of the courts to limit or step away from the doctrine of the immunity of a parent from a tort action by his unemancipated child. We are not in accord with the reasoning of some of the courts that the presence or absence of liability insurance should make a difference in respect to liability, as we are of the opinion that the problem presented to us should be solved irrespective of the question of such insurance since it does not have any effect upon the merits of a tort controversy between any parties.
The history of the rule of the immunity of a parent from a tort action by his unemancipated child is well stated in Prosser on Torts, 905, Section 99. After stating that the chief reason relied upon by the courts in reference to a tort action by a wife against her hus *574 band, that such an action would disrupt and destroy the peace and harmony of the home which is against the policy of the law, the author says:
“The common law had no similar conception of unity of legal identity in the case of a parent and his minor child. Although the parent was given custody' of the child, the latter remained a separate legal person, entitled to the benefits of his own property and to the enforcement of his own choses in action, including those in tort, and was liable in turn as an individual for his own torts. Consequently there were no such theoretical difficulties, no emancipation acts similar to the Married Women’s Acts were necessary, and statutory construction has not entered into the question of tort liability between parent and child.
“In matters affecting property, causes of action seem always to have been freely recognized, on the part of either the parent or the child. There is good reason to believe that the English law would permit actions for personal torts as well, subject always to the parent’s privilege to enforce reasonable discipline against the child. But beginning with a Mississippi case in 1891 [Hewlett v. George, Exr., supra], whicn cited no authorities, the bulk of the American court? have refused to allow actions between parent and minor child for personal torts, whether they are intentional or negligent in character. For reasons that are not at all apparent, however, the action sometimes has been permitted against one who is not a parent but merely stands in the place of a parent, such as another relative who has custody of the child.
“The courts which deny the action have relied heavily on the analogy of husband and wife, which seems quite inapplicable because of the difference in the common law concept of the relations, and the absence of statutes to be construed. In addition, they have invented much the same variety of unconvincing reasons *575 as in the ease of the marital relation. The danger of ‘fraud’ has been stressed, although it is difficult to see why it is any greater, as between the parties themselves, than in any other tort action involving an infant; and likewise the possibility that the defendant might inherit the amount recovered in case of the plaintiff’s death, or that the family exchequer might be depleted at the expense of other children — neither of which reasons seems to outweigh the desirability of compensating the injured one for his damage; But again, as in the case of husband and wife, the chief reason offered is that domestic tranquility and parental discipline and control would be disturbed by the action — and again on the theory that an uncompensated tort makes for peace in the family and respect for the parent, even though it be rape or a brutal beating, and even though the relation itself has been terminated by death before the suit. On this basis the action has been allowed where the child has been ‘emancipated’ by the parent’s surrender of the right to his earnings and services, and to parental control. But none of these arguments has been held sufficient to bar ah action by or against an unemancipated minor where property is involved, although they are all equally applicable in such a case; and an action for a personal tort has been permitted between minor brother and sister. ’ ’
In the present case the action is between a minor child and his father in his business or vocational capacity.
In these modern times, with the advent of the motor vehicle and the growing complications of business and industry and where in an industrial age we are living under changed conditions, it would seem a fantastic anomaly that in a case where two minor children were negligently injured in the operation of a business, one of them, a stranger, could recover compensation for *576 his injuries and the other one, a minor child of the owner of the business, could not.
Ordinarily, tort actions by minor children against their parents in normal, harmonious families would be rare indeed because of the natural concern of the parents to adequately provide and care for their children, and where such actions were, brought there would be a strong indication that there was no harmony or domestic felicity in the family involved to be disturbed.
It seems absurd to say that it is legal and proper for an unemancipated child to bring an action against his parent concerning the child’s property rights yet to be utterly without redress with reference to injury to his person.
It is difficult to understand by what legerdemain of reason, logic or law such a situation can exist or how it can be said that domestic harmony would be undisturbed in one case and be upset in the other.
It has been suggested that if tort actions were maintainable by an unemancipated child against his parent there would be danger of collusion or fraud, particularly where a liability insurance company was involved. That may be true. But there was the same situation with reference to the liability of the operator of an automobile to his guest in the automobile. However, the courts of this state always recognized that liability until the legislative branch of the government enacted-the guest statute, now Section 6308-6, General Code, which forbids a nonpaying guest in an automobile to maintain an action in tort against the owner or operator thereof in the absence of wilful or wanton misconduct of such owner or operator.
Assuredly, if the legislative branch of the government should be of the opinion that the danger of collusion or fraud is an evil which outweighs the desirability of the right of redress of an unemancipated child for a tort committed by his parent it could abol *577 ish that right by legislative enactment. So far as liability insurance companies are concerned, if they should become fearful of the danger of collusion or fraud, they could provide in their policies that there be no coverage in reference to an action between such unemancipated child and his parent.
In view of the changed conditions to which we have referred, we have come to the conclusion that, if there ever was any justification for the rule announced in Mississippi in 1891, that justification has now disappeared and that an unemancipated child should have as clear a right to maintain an action in tort against his parent in the latter’s business or vocational capacity as such child would have to maintain an action in relation to his property rights.
Before closing this opinion we wish to make one observation in reference to the petition in this case. Therein plaintiff alleged that a fire burst forth near the pump, described in the petition, and burned the plaintiff. Thereafter plaintiff alleged five specifications of negligence but did not in words narrate any causal relation between the specified acts of negligence and the fire. Such relation is shown only by inference.
We are of the opinion that the motion to make the petition definite and certain should have been granted by the trial court so as to make clear plaintiff’s claim. However, this matter can be remedied by the filing of an amended petition in the trial court.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Middleton, Tapi, Matthias and Hart, JJ., concur.