JANE DOE AND SALLY DOE, BY AND THROUGH THEIR GUARDIAN *AD LITEM*, ANNE CONNOLLY v. FRANK HOLT

No. 379PA91

(Filed 17 July 1992)

**1. Parent and Child § 2.1 (NCI3d) — parent-child immunity — doctrine still applicable**

The parent-child immunity doctrine as first enunciated in *Small v. Morrison*, 185 N.C. 577, 118 S.E. 12, continues to apply in North Carolina, except to the extent it has been specifically abolished or amended by the legislature.

**Am Jur 2d, Parent and Child §§ 138-139.**

DOE v. HOLT

[332 N.C. 90 (1992)]

**2. Parent and Child § 2.1 (NCI3d) — parent-child immunity doctrine — inapplicability to willful and malicious act**

The parent-child immunity doctrine does not apply to a claim by an unemancipated minor against a parent for a willful and malicious act resulting in injury to the child.

**Am Jur 2d, Parent and Child § 148.**

**Liability of parent for injury to unemancipated child caused by parent's negligence — modern cases. 6 ALR4th 1066.**

**3. Parent and Child § 2.1 (NCI3d) — parent-child immunity — inapplicable to repeated rapes and sexual molestations**

A suit by two minor plaintiffs against their father for damages allegedly resulting from his having repeatedly raped and sexually molested them is not barred by the parent-child immunity doctrine because plaintiffs' complaint alleged conduct by their father which was both "willful" and "malicious."

**Am Jur 2d, Parent and Child § 148.**

**Liability of parent for injury to unemancipated child caused by parent's negligence — modern cases. 6 ALR4th 1066.**

Justice MEYER concurring in result.

ON discretionary review of the decision of the Court of Appeals, 103 N.C. App. 516, 405 S.E.2d 807 (1991), reversing an order entered 27 August 1990, *nunc pro tunc* 9 August 1990, by *Walker, J.,* in the Superior Court, FORSYTH County. Heard in the Supreme Court on 9 March 1992.

*David F. Tamer for the defendant appellant.*

*Theodore M. Molitoris and Robert S. Blair, Jr., for the plaintiffs-appellees.*

*Law Office of Elizabeth Kuniholm, by Elizabeth J. Armstrong, for the North Carolina Association of Women Attorneys, and Marjorie Putnam for the North Carolina Academy of Trial Lawyers, amici curiae.*

MITCHELL, Justice.

The issue before this Court is whether this suit by two minor plaintiffs against their father for damages allegedly resulting from

DOE v. HOLT

[332 N.C. 90 (1992)]

his having repeatedly raped and sexually molested them is barred by the parent-child immunity doctrine. We conclude that the complaint states a claim upon which relief can be granted and that the parent-child immunity doctrine does not bar this suit.

In their complaint, the plaintiffs allege that they are both unemancipated minors. They resided with the defendant, their natural father, from 5 August 1978 until June 1989. Beginning in 1980, when the plaintiffs were five and six years old respectively, the defendant raped and sexually molested both plaintiffs repeatedly; these acts continued until 1989. The defendant pled guilty, in a separate criminal action, to charges of second-degree rape and second-degree sexual offense; those charges and convictions involved some of the same acts against the plaintiffs forming the basis of the tort claims presented in this case. At the time the complaint was filed, the defendant was serving an active prison sentence for those acts.

The plaintiffs brought this tort action by and through their guardian *ad litem* to recover damages for permanent physical, mental and emotional injuries they suffered as a result of being raped and sexually molested by the defendant, their father. The defendant moved to dismiss the plaintiffs' complaint for failure to state a claim upon which relief could be granted, contending that the parent-child immunity doctrine barred the action. The trial court granted the defendant's motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. N.C.G.S. § 1A-1, Rule 12(b)(6) (1990). The plaintiffs appealed to the Court of Appeals.

The Court of Appeals concluded that the plaintiffs' action was not barred by the parent-child immunity doctrine and reversed the order of the trial court. *Doe v. Holt*, 103 N.C. App. 516, 405 S.E.2d 807 (1991). For the reasons which follow, we affirm the holding of the Court of Appeals.

The doctrine of parent-child immunity was first recognized in the case of *Hewllette v. George*, 68 Miss. 703, 9 So. 885 (1891). In North Carolina, the doctrine was first applied in *Small v. Morrison*, 185 N.C. 577, 118 S.E. 12 (1923). In denying a minor child's action to recover damages against her father for his negligence resulting in an automobile collision, this Court stated:

[T]he government of a well ordered home is one of the surest bulwarks against the forces that make for social disorder and

**DOE v. HOLT**

[332 N.C. 90 (1992)]

civic decay. It is the very cradle of civilization, with the future welfare of the commonwealth dependent, in a large measure, upon the efficacy and success of its administration. Under these conditions, the State will not and should not permit the management of the home to be destroyed by the individual members thereof, unless and until the interests of society are threatened.

*Id.* at 584, 118 S.E. at 15.

We are well aware of the fact that some appellate courts and legislatures have abolished or significantly eroded the parent-child immunity doctrine in other jurisdictions. *See generally* Dean, *It's Time to Abolish North Carolina's Parent-Child Immunity, But Who's Going to Do It?* 68 N.C.L. Rev. 1317, 1328 n. 123 (1990) (listing states where the doctrine has been abolished or modified); 59 Am. Jur. 2d *Parent and Child* § 139 (1987) (same). But since our decision in *Small*, this Court has consistently applied the rule enunciated in that case; "an unemancipated minor child may not maintain an action based on ordinary negligence against his parents." *Lee v. Mowett Sales Co.*, 316 N.C. 489, 491, 342 S.E.2d 882, 884 (1986). *See Redding v. Redding*, 235 N.C. 638, 70 S.E.2d 676 (1952). The parent-child immunity doctrine was abrogated in part, however, when the General Assembly enacted a statute making it inapplicable to actions "arising out of the operation of a motor vehicle owned or operated by the parent or child." N.C.G.S. § 1-539.21 (1991 Cum. Supp.). After the enactment of this statute, we were asked to judicially abolish what remained of the parent-child immunity doctrine. We declined to do so because "[t]o judicially abolish the parent-child immunity after the legislature has considered and retained the doctrine would be to engage in impermissible judicial legislation." *Lee*, 316 N.C. at 494, 342 S.E.2d at 885. We stated that "[t]he doctrine will continue to be applied as it now exists in North Carolina until it is abolished or amended by the legislature." *Id.* at 495, 342 S.E.2d at 886. We adhere to that statement in this case.

[1] We do not deviate from the position we took in *Lee*, to the effect that the parent-child immunity doctrine as first enunciated in *Small* continues to apply in North Carolina, except to the extent it has been specifically abolished or amended by the legislature. *Id.* However, the case before us is not one in which we are asked to modify or abolish the parent-child immunity doctrine. The question before us here is whether the parent-child immunity doctrine, as it has existed in North Carolina since *Small*, bars tort claims

DOE v. HOLT

[332 N.C. 90 (1992)]

for injuries unemancipated minors have suffered as a result of a parent's willful and malicious conduct. We conclude that the doctrine does not bar such claims.

A number of jurisdictions have had an opportunity to address the question presented by this case. *See* 59 Am. Jur. 2d *Parent and Child* § 148 (1987). The modern trend is to allow an unemancipated minor to recover damages against his or her parent for injuries resulting from the parent's willful misconduct. *Id.; see, e.g., Hurst v. Capitell*, 539 So. 2d 264 (Ala. 1989); *Nudd v. Matsoukas*, 7 Ill. 2d 608, 131 N.E.2d 525 (1956); *Elkington v. Foust*, 618 P.2d 37 (Utah 1980). A review of two such cases is beneficial when considering whether the parent-child immunity doctrine applies to bar claims for injuries resulting from willful and malicious acts of parents against their unemancipated children in North Carolina.

In *Attwood v. Estate of Attwood*, 276 Ark. 230, 633 S.W.2d 366 (1982), Janice Attwood brought a complaint on behalf of her injured minor son against his father for causing the son injuries. The complaint alleged that the father willfully and intentionally became intoxicated, entered an automobile with his child as a passenger, and drove at a speed greatly in excess of the posted speed limit. As a result, the father's vehicle left the roadway and overturned, killing him and injuring the minor son. *Id.* at 232, 633 S.W.2d at 367. The Supreme Court of Arkansas reversed the trial court's order of summary judgment for the defendant father stating that the complaint alleged conduct which was tantamount to willful and wanton misconduct which was not protected by the parent-child immunity doctrine. *Id.* at 238, 633 S.W.2d at 370. The Court said that "[t]he fact that willfulness has to be proven should preclude fraud or collusion from being a problem. We think it is clear that a willful tort is beyond the scope of the parental immunity doctrine in Arkansas." *Id.*

In *Foldi v. Jeffries*, 93 N.J. 533, 461 A.2d 1145 (1983), an unemancipated minor wandered onto a neighbor's driveway where she was bitten on the face by the neighbor's dog. The minor brought suit against the owners of the dog, who in turn sought indemnification from the minor plaintiff's parents for failure to supervise their child. The parents pled the parent-child immunity doctrine contending that it barred the action against them, and the trial court agreed. *Id.* at 536, 461 A.2d at 1147. The Supreme Court of New Jersey affirmed the trial court, concluding — just as this Court con-

cluded in *Lee* — that the parent-child immunity doctrine was still viable in New Jersey to the extent that it barred actions against a parent for simple negligence in supervision of his or her child. *Id.* at 545, 461 A.2d at 1152. The Supreme Court of New Jersey reasoned that: "There are certain areas of activities within the family sphere involving parental discipline, care, and control that should and must remain free from judicial intrusion. Parents should be free to determine how the physical, moral, emotional, and intellectual growth of their children can best be promoted." *Id.* However, the Court further explained that such policy considerations would not justify extending immunity under the doctrine to include a parent's willful misconduct. *Id.* at 547, 461 A.2d at 1152.

The defendant argues in the present case that the parent-child immunity doctrine, as it has been recognized and applied in North Carolina since our decision in *Small*, operates as a complete bar to all tort suits by unemancipated children against their parents unless specifically authorized by statute. We disagree.

The history of the parent-child immunity doctrine in North Carolina reveals that maintenance of family harmony was foremost among the public policies the doctrine was intended to serve. *Lee*, 316 N.C. at 492, 342 S.E.2d at 884; *Skinner v. Whitley*, 281 N.C. 476, 480, 189 S.E.2d 230, 232 (1972). It was feared that suits by children against their parents for negligent injury would "tend to destroy parental authority and to undermine the security of the home." *Small*, 185 N.C. at 584, 118 S.E. at 15. For such reasons, the doctrine has been applied in North Carolina to bar actions between unemancipated children and their parents based on *ordinary* negligence. *Lee*, 316 N.C. at 491, 342 S.E.2d at 884; *Skinner*, 281 N.C. at 484, 189 S.E.2d at 235.

[2] The issue directly presented by this case is whether the parent-child immunity doctrine applies to a claim by an unemancipated minor against a parent for a willful and malicious act resulting in injury to the child. In *Skinner*, we rejected the plaintiff's request to abolish the parent-child immunity in "ordinary negligence cases" but stated: "Of course, the question raised by an intentional, willful or malicious tort inflicted on a child by a parent or person *in loco parentis* is not presented on this appeal. We will pass on that question when it arises in a case properly before us." *Id.* The present case is just such a case requiring that we address and resolve with finality the issue of whether the parent-child

**DOE v. HOLT**

[332 N.C. 90 (1992)]

immunity doctrine extends to cases arising from willful and malicious acts against an unemancipated minor by his or her parent.

In *Lee v. Mowett Sales Co.*, 316 N.C. 489, 342 S.E.2d 882 (1986), we held that the parent-child immunity doctrine barred a third-party plaintiff's suit against the father of the injured minor seeking contribution for the father's negligence in causing his minor child's injuries. In so doing, we stated in *obiter dictum*: "However, the parent-child immunity doctrine does not apply to . . . actions by an unemancipated minor involving willful and malicious acts. . . ." *Id.* at 492, 342 S.E.2d at 884. Faced as we are here with a case requiring us to decide the issue with finality, we adhere to the view we expressed in *Lee*; we conclude that the parent-child immunity doctrine in North Carolina has never applied to, and may not be applied to, actions by unemancipated minors to recover for injuries resulting from their parent's willful and malicious acts.

[3] In reviewing the propriety of the trial court's dismissal of the plaintiff's complaint for failure to state a claim upon which relief can be granted, we must next resolve the issue of whether the plaintiffs' complaint alleged "willful and malicious acts" sufficient to withstand the defendant's motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. An act is "willful" "when it is done purposely and deliberately in violation of law . . . or when it is done knowingly and of set purpose. . . ." *Foster v. Hyman*, 197 N.C. 189, 191, 148 S.E. 36, 37 (1929) (citations omitted); *see generally Brewer v. Harris*, 279 N.C. 288, 182 S.E.2d 345 (1971); *Ballew v. R.R.*, 186 N.C. 704, 120 S.E. 334 (1923); *Bailey v. R.R.*, 149 N.C. 169, 62 S.E. 912 (1908). "Malice in law" is "presumed from tortious acts, deliberately done without just cause, excuse or justification, which are reasonably calculated to injure another or others." *Betts v. Jones*, 208 N.C. 410, 411, 181 S.E. 334, 335 (1935), *quoted in McKeel v. Armstrong*, 96 N.C. App. 401, 406, 386 S.E.2d 60, 63 (1989). It is clear in light of such definitions that the plaintiffs' complaint in the present case alleged conduct against the plaintiffs by their father which was both "willful" and "malicious."

It would be unconscionable if children who were injured by heinous acts of their parents such as alleged here should have no avenue by which to recover damages in redress of those wrongs. Where a parent has injured his or her child through a willful and malicious act, any concept of family harmony has been destroyed.

**DOE v. HOLT**

[332 N.C. 90 (1992)]

Thus, the foremost public purpose supporting the parent-child immunity doctrine is absent, and there is no reason to extend the doctrine's protection to such acts.

We wish to make it clear that no issue involving reasonable chastisement of children by their parents is before us in the present case, and we expressly do not intend to be understood as commenting on situations involving such issues. *See generally* 3 Lee, *North Carolina Family Law* § 249 (4th ed. 1981). Furthermore, our opinion in the present case is not intended to permit interference in the proper scope of discretion parents must utilize in rearing their children. As the Supreme Court of New Jersey recognized in *Foldi*, there is no universally correct philosophy on how to raise one's child. *Foldi*, 93 N.J. at 546, 461 A.2d at 1152. In no way do we intend to indicate that reasonable parental decisions concerning children should be reviewed in the courts of this state. Such decisions make up the essence of parental discretion, discretion which allows parents to shape the views, beliefs and values their children carry with them into adulthood. These decisions are for the parents to make, and will be protected as such. *See generally Small v. Morrison*, 185 N.C. 577, 118 S.E. 12 (1923).

Here, we have addressed a different concern; when a parent steps beyond the bounds of reasonable parental discretion and commits a willful and malicious act which injures his or her child, the parent negates the public policies which led to recognition of the parent-child immunity doctrine in North Carolina, and the doctrine does not shield the parent. In the present case, the defendant's rapes and sexual abuses of his two minor daughters certainly constituted "willful and malicious acts" against them. Therefore, the plaintiffs' complaint alleged a proper claim for relief and should not have been dismissed under Rule 12(b)(6).

The decision of the Court of Appeals, reversing the trial court's order dismissing the plaintiffs' complaint, is affirmed for the reasons previously set forth in this opinion.

Affirmed.

Justice MEYER concurring in result.

While I concur in the result reached by the majority, I fear that this is one of those cases where bad facts make bad law. The defendant-father repeatedly raped and sexually molested his

daughters for almost ten years, beginning when they were five and six years old, respectively. The defendant pled guilty to the charges and received an active prison sentence. The daughters, at the time they filed their verified complaint, were ages fifteen and sixteen. This appears to be an open and shut case, as the facts alleged in the verified complaint are not contested and indeed the defendant-father pled guilty to the very acts alleged in the daughters' complaint.

As the majority has noted, the facts of this case are so egregious that to deny recovery would border the unconscionable. I believe, however, that this Court should keep faith with its earlier commitment to continue to apply the parent-child immunity doctrine until it is abolished or amended by the legislature. That position evidenced, and would continue to evidence, this Court's recognition that the legislature is in a far better position than this Court to gauge the wisdom of changing the public policy of the state. The legislature did so when it recently adopted N.C.G.S. § 1-539.21, making the doctrine inapplicable to actions arising out of the operation of a vehicle owned by the parent or child. We should leave it to that body to recognize an exception for willful and malicious acts of the parent against a child.

Since the doctrine's inception, the bench and bar of the state have understood the doctrine of parent-child immunity to apply to all actions for personal injuries, however they were caused. I believe that the majority errs in concluding that it is not recognizing an exception but simply discovering that the doctrine never applied at all except in cases involving "ordinary negligence." This is made clear to me by the fact that the majority limits its holding to "willful and malicious" acts of parents. Rather than flatly holding that the doctrine is inapplicable to all acts of negligence beyond "ordinary negligence," it specifically hedges by limiting its holding to "willful and malicious" acts.

In *Small v. Morrison*, 185 N.C. 577, 118 S.E. 12 (1923), this Court held that the minor plaintiff could not recover against her father for injuries she had sustained in an automobile accident. *Id.* at 579, 118 S.E. at 13. Though the facts in *Small* involved negligently inflicted injuries, the Court's reasoning and holding show that the doctrine, as adopted in North Carolina, is not nearly so narrow as the majority has concluded. In its opinion, the *Small* Court cited with approval four cases to justify its adoption of the

doctrine of parent-child immunity, three of which involved intentional torts: *Hewlett v. George*, 68 Miss. 703, 9 So. 885 (1891); *McKelvey v. McKelvey*, 111 Tenn. 388, 77 S.W. 664 (1903); *Roller v. Roller*, 37 Wash. 242, 79 P. 788 (1905). A careful examination of the circumstances underlying these cases establishes that in these cases, each state supreme court denied recovery because of parent-child immunity, despite the intentional acts of the parent. In *Hewlett*, the plaintiff-child sued her mother for wrongfully committing her to an insane asylum. *McKelvey* involved a daughter who sued her father and stepmother for "cruel and inhuman treatment" by the stepmother at the father's instance. In *Roller*, the father had been convicted of raping his daughter.

I concede that there is dicta in cases since *Small* which purport to limit the doctrine to negligently inflicted injuries. *See Lee v. Mowett Sales Co.*, 316 N.C. 489, 342 S.E.2d 882 (1986); *Coffey v. Coffey*, 94 N.C. App. 717, 381 S.E.2d 467 (1989), *disc. rev. improvidently allowed*, 326 N.C. 586, 391 S.E.2d 40 (1990) (per curiam). However, in none of those cases was that issue presented. Furthermore, none of them distinguished or overruled *Small*, and therefore, none is controlling in this case.

Research reveals no North Carolina case in which an appellate court has allowed a minor child to bring a claim against a parent for an intentional tort. This result is consistent with *Skinner v. Whitley*, 281 N.C. 476, 189 S.E.2d 230 (1972), wherein the Court stated that such immunity was *reciprocal*: So long as the parent could not sue the child, the child could not sue the parent. *Id.* at 479, 189 S.E.2d at 231; *see generally Carver v. Carver*, 310 N.C. 669, 314 S.E.2d 739 (1984). Speaking for the Court in *Skinner*, Justice Huskins stated:

In North Carolina and the great majority of other states, the rule is that "an unemancipated minor child cannot maintain a tort action against his parent for personal injuries, even though the parent's liability is covered by liability insurance. This rule implements a public policy protecting family unity, domestic serenity, and parental discipline. . . . Upon the same theory, an overwhelming majority of jurisdictions likewise hold that neither a parent nor his personal representative can sue an unemancipated minor child for a personal tort. . . . 'The child's immunity is said to be reciprocal of

the parent's immunity.'" *Gillikin v. Burbage*, 263 N.C. 317, 139 S.E.2d 753 (1965).

281 N.C. at 478, 189 S.E.2d at 231.

Though the majority says otherwise, it is clearly recognizing an exception to the immunity rule, and an exception to the rule by any other name is still an exception. Because of the peculiar nature of these cases, the recognition of an exception would be a far better solution. Some states that have made an exception have limited the exception to cases of sexual abuse, which I believe is all that is called for here.

While I agree with the majority that the plaintiff should recover on the facts alleged here, the same result could be reached with far less damage to existing law. My reticence to join the majority opinion arises not from its result, but from my fear of how the law it announces will be applied in future cases in this particular area, and surely many will be spawned by this case.

In addition to limiting our holding in this case to cases of sexual abuse, I would prefer that this Court erect some hurdles that would weed out the truly marginal cases. One method would be to raise the standard of proof required for recovery from a preponderance of the evidence to clear, cogent, and convincing evidence. Such a course of action by this Court would not be without precedent. Only recently in recognizing a cause of action for unintentional infliction of emotional distress, and because of similar concerns, we took the extraordinary step of imposing a high standard of proof of the injury claimed. *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 395 S.E.2d 85 (plaintiff may not recover damages where mere fright or temporary anxiety does not amount to severe emotional distress; "severe emotional distress" means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition that may be generally recognized and diagnosed by professionals trained to do so; factors to be considered on the question of foreseeability include the plaintiff's proximity to the negligent act, the relationship between the plaintiff and the other person for whose welfare the plaintiff is concerned, and whether the plaintiff personally observed the negligent act), *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990).

For the foregoing reasons, I concur only in the result reached by the majority.