LENAE HENDERSON *v.* JAMES MORELY WOOLLEY
(14818)

CALLAHAN, BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued May 12—decision released August 2, 1994

*Richard J. Tuneski,* pro hac vice, with whom was *C. George Kanabis,* for the appellant (plaintiff).

*Susan V. Tirrell,* with whom was *A. Paul Spinella,* for the appellee (defendant).

BERDON, J. The question[1] certified for our advice is whether the doctrine of parental immunity bars an action by a minor child against his or her parent for personal injuries arising out of sexual abuse, sexual assault or sexual exploitation.[2] The question comes to this court upon our grant of certification from the

---

[1] The specific question is as follows: "Does the doctrine of parental immunity bar an action by a minor child against his or her parent for personal injuries arising out of sexual abuse, sexual assault or sexual exploitation?"

[2] We have defined the parental immunity doctrine as barring a child from suing his or her parent for negligent acts or omissions that occurred while the child was an unemancipated minor, regardless of whether the child has reached majority at the time of the action. *Dubay* v. *Irish,* 207 Conn. 518, 523, 542 A.2d 711 (1988).

United States District Court for the District of Connecticut (District Court) pursuant to General Statutes § 51-199a[3] and Practice Book § 4168.[4] We conclude that the parental immunity doctrine does not bar the plaintiff from asserting a cause of action for such parental misconduct.

The record certified by the District Court provides the following facts. The plaintiff, Lenae Henderson, was born on December 21, 1961, and is the daughter of the defendant, James Morely Woolley. Both the plaintiff and the defendant resided in Connecticut from 1965 until 1976. The plaintiff alleges that when she was four years old, the defendant began having sexual relations with her. She further alleges that the defendant forced her to engage in sexual acts, and that he dominated her through mental and physical coercion and duress so that she would engage in those sexual acts.

---

[3] General Statutes § 51-199a, entitled the "Uniform Certification of Questions of Law Act," provides in relevant part: "(b) The supreme court may answer questions of law certified to it by the Supreme Court of the United States, a court of appeals of the United States or a United States district court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

"(c) This section may be invoked by an order of any of the courts referred to in subsection (b) of this section upon the court's own motion or upon the motion of any party to the cause.

"(d) A certification order shall set forth: (1) The questions of law to be answered; and (2) a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose."

[4] Practice Book § 4168 provides: "The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States or a United States district court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state."

It is alleged by the plaintiff that the acts included digital intercourse, oral sex and, from the age of twelve, sexual intercourse. This abuse allegedly persisted until the plaintiff reached the age of fourteen. The plaintiff, who is now approximately thirty-three years old, claims that all her memories of the abuse were repressed until they were recalled during psychological therapy.

The plaintiff claims that she has sustained permanent, severe and continuing mental trauma and emotional distress as a result of the defendant's conduct. She brought an action against the defendant, who presently resides in Georgia, in the District Court seeking to recover damages from the defendant for her alleged injuries and for past and future medical expenses. The defendant claims that the doctrine of parental immunity bars any such action in tort, and that because Connecticut's long arm statute[5] does not extend in personam jurisdiction without prima facie evidence that a tort has been committed, the plaintiff's complaint must be dismissed. The District Court sought certification to this court because the question whether the parental immunity doctrine extends to parental sexual abuse is unresolved in Connecticut. We agree with the plaintiff that it does not.

The parental immunity doctrine was first recognized by the Mississippi Supreme Court in *Hewlett* v. *George,* 68 Miss. 703, 9 So. 885 (1891), in which a daughter sought to sue her mother for wrongfully having confined her to an insane asylum when she was a minor. The court held that the daughter's action was barred, reasoning: "The peace of society, and of the families composing society, and a sound public policy, designed

---

[5] General Statutes § 52-59b provides in relevant part: "(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent . . . (2) commits a tortious act within the state . . . ."

to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrong-doing, and this is all the child can be heard to demand." Id., 711. In two subsequent cases, the courts extended the doctrine to bar a tort action for cruel and unusual treatment of a child by a parent; *McKelvey* v. *McKelvey,* 111 Tenn. 388, 77 S.W. 664 (1903), overruled, *Broadwell* v. *Holmes,* 871 S.W.2d 471 (Tenn. 1994); and the rape of a minor daughter by her father. *Roller* v. *Roller,* 37 Wash. 242, 79 P. 788 (1905); see generally *Dzenutis* v. *Dzenutis,* 200 Conn. 290, 295, 512 A.2d 130 (1986). Although the *Roller* case involved intentional conduct, this decision, more recently, has been criticized severely by several courts; see *Foldi* v. *Jeffries,* 93 N.J. 533, 537, 461 A.2d 1145 (1983) (labeling the result absurd); *Felderhoff* v. *Felderhoff,* 473 S.W.2d 928, 930 (Tex. 1971) (finding *Roller* and *McKelvey* to be primitive and now abandoned applications of the doctrine); including the Supreme Court of Washington. See *Borst* v. *Borst,* 41 Wash. 2d 642, 647, 251 P.2d 149 (1952) (referring to the *Roller* analysis of the state of the common law as clearly erroneous).[6]

---

[6] The defendant contends that the parental immunity doctrine was founded on cases that involved claims of willful and malicious conduct. Neither the facts nor the opinions in *Hewlett* v. *George,* supra, 68 Miss. 703, and *McKelvey* v. *McKelvey,* supra, 111 Tenn. 388, indicates, however, whether the parental conduct involved was negligent, intentional, willful or otherwise. Moreover, it is noteworthy that in *Borst* v. *Borst,* supra, 41 Wash. 2d 647, the Washington Supreme Court stated that if the tort of the parent is intentional or willful, "recent decisions uniformly allow the child a cause of action." Similarly, in *Jenkins* v. *Snohomish County Public Utility District,* 105 Wash. 2d 99, 713 P.2d 79 (1986), the court stated in dicta that the parental immunity doctrine does not extend to willful or wanton parental misconduct. The court defined willful or wanton misconduct as falling between simple negligence and an intentional tort. These cases have effectively overruled *Roller* v. *Roller,* supra, 37 Wash. 242, and anything

The parental immunity doctrine was eventually adopted in varying degrees by most states. Although some states initially adopted the doctrine as an absolute bar to any action in tort by an unemancipated minor child against a parent, many states either limited parental immunity to suits alleging parental negligence or were unwilling to extend it to acts of willful, intentional or wanton parental misconduct.[7] In 1963, Wisconsin became the first state generally to abrogate the doctrine,[8] and several other states have subsequently done the same.[9] The American Law Institute rejected

---

constituting an intentional tort, such as sexual assault, would arguably be unprotected in Washington by the parental immunity doctrine. See also *Talarico* v. *Foremost Ins. Co.*, 105 Wash. 2d 114, 712 P.2d 294 (1986) (stating in dicta that a parental act rising to the level of willful and wanton misconduct is actionable in tort). Additionally, *McKelvey* was overruled by *Broadwell* v. *Holmes, supra*, 871 S.W.2d 471, and a recent decision in Mississippi has substantially limited the doctrine in that state. See *Glaskox* v. *Glaskox*, 614 So. 2d 906 (Miss. 1992).

[7] See, e.g., *Attwood* v. *Estate of Attwood*, 276 Ark. 230, 633 S.W.2d 366 (1982) (child may sue for willful tort of parent); *Schlessinger* v. *Schlessinger*, 796 P.2d 1385 (Colo. 1990) (parental immunity does not extend to willful or wanton parental misconduct); *Foldi* v. *Jeffries, supra*, 93 N.J. 533 (parental immunity extends only to simple negligence and not willful or wanton misconduct); *Doe* v. *Holt*, 332 N.C. 90, 418 S.E.2d 511 (1992) (abrogating the doctrine in cases of willful or malicious acts by parents resulting in injury to child); *Sixkiller* v. *Summers*, 680 P.2d 360 (Okla. 1984); *Felderhoff* v. *Felderhoff, supra*, 473 S.W.2d 928; *Jenkins* v. *Snohomish County Public Utility District*, 105 Wash. 2d 99, 713 P.2d 79 (1986) (doctrine does not extend to cases of willful and wanton misconduct by parents).

[8] See *Goller* v. *White*, 20 Wis. 2d 402, 122 N.W.2d 193 (1963) (abrogating doctrine but providing that parent would not be liable for negligent acts committed in exercise of parental supervision or discretion in caring for child).

[9] See, e.g., *Gibson* v. *Gibson*, 3 Cal. 3d 914, 479 P.2d 648, 92 Cal. Rptr. 288 (1971); *Briere* v. *Briere*, 107 N.H. 432, 224 A.2d 588 (1966); *Holodook* v. *Spencer*, 36 N.Y.2d 35, 324 N.E.2d 338, 364 N.Y.S.2d 859 (1974); *Shearer* v. *Shearer*, 18 Ohio St. 3d 94, 480 N.E.2d 388 (1985); see also *Wagner by Griffith* v. *Smith*, 340 N.W.2d 255 (Iowa 1983) (doctrine extends only to negligence arising from parental care, supervision or discretion); *Rigdon* v. *Rigdon*, 465 S.W.2d 921 (Ky. 1971) (immunity extends only to acts of negligence arising during parental supervision and care); *Plumley* v. *Klein*, 388 Mich. 1, 199 N.W.2d 169 (1972) (abrogating doctrine except for exercise of parental authority or discretion).

parental immunity entirely in 1977. See 4 Restatement (Second), Torts § 895G.[10] Even states that extend the doctrine to simple negligence have created exceptions for certain negligent acts.[11] We have found only four states that continue to extend parental immunity to all torts.[12]

Parental immunity was first recognized by Connecticut in *Mesite* v. *Kirchenstein,* 109 Conn. 77, 145 A. 753

---

[10] 4 Restatement (Second), Torts § 895G provides: "(1) A parent or child is not immune from tort liability to the other solely by reason of that relationship.

"(2) Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious."

Comment (a) to § 895G of the Restatement unambiguously provides: "This Section rejects the immunity from liability in tort between parent and child, which until quite recent years has been accepted, albeit with numerous exceptions, by all of the American courts."

[11] See, e.g., *Hebel* v. *Hebel,* 435 P.2d 8 (Alaska 1967) (doctrine does not extend to negligent driving by parent); *Sandoval* v. *Sandoval,* 128 Ariz. 11, 623 P.2d 800 (1981) (same); *Trevarton* v. *Trevarton,* 151 Colo. 418, 378 P.2d 640 (1963) (parental business activities are not covered by immunity); *Williams* v. *Williams,* 369 A.2d 669 (Del. 1976) (abrogating doctrine in case of negligent driving); *Ard* v. *Ard,* 395 So. 2d 586 (Fla. App. 1981), aff'd in part, 414 So. 2d 1066 (Fla. 1982) (parental immunity does not apply to extent of parent's liability insurance); *Farmers Ins. Group* v. *Reed,* 109 Idaho 849, 712 P.2d 550 (1985) (abrogating doctrine in case of negligent motor vehicle operation to extent of insurance coverage); *Larson* v. *Buschkamp,* 105 Ill. App. 3d 965, 435 N.E.2d 221 (1982) (abrogated for negligent operation of motor vehicle); *Black* v. *Solmitz,* 409 A.2d 634 (Me. 1979) (no immunity in cases of negligent operation of automobile).

[12] See, e.g., *Coleman* v. *Coleman,* 157 Ga. App. 533, 278 S.E.2d 114 (1981); *Vaughan* v. *Vaughan,* 161 Ind. App. 497, 316 N.E.2d 455 (1974); *Bondurant* v. *Bondurant,* 386 So. 2d 705 (La. App. 1980) (in Louisiana, parental immunity doctrine is extended by statute to both parents during marriage and only to custodial parent after divorce); *Frye* v. *Frye,* 305 Md. 542, 505 A.2d 826 (1986).

Both Tennessee and Mississippi have recently reexamined the doctrine and restricted it. See *Broadwell* v. *Holmes,* supra, 871 S.W.2d 471 (parental immunity does not extend to injuries due to acts outside the exercise of parental authority, supervision and care); *Glaskox* v. *Glaskox,* 614 So. 2d 906 (Miss. 1992) (parental immunity does not extend to negligent operation of a motor vehicle).

(1929). The plaintiff, an unemancipated minor who was injured in an automobile driven by her father, sought to sue her father for negligence. In holding that parental immunity shielded her father from liability, this court found particularly persuasive the fact that the doctrine of parental immunity had been adopted in all eleven states in which the question had arisen. The rationale for the doctrine was described by the court as follows: "Authority in the parent to require obedience in the child is indispensable to the maintenance of unity in the family. Anything which undermines this authority, brings discord into the family, weakens its government and disturbs its peace, is an injury to society and to the State. Few things could bring about this unhappy condition more quickly or widen the breach between parent and child further than the bringing of an action at law for personal injuries by a minor child against the parent. Such unseemly family discord is injurious to the public welfare, to such a degree that all the courts of this country, which have had occasion to express their opinion upon the right of the minor to maintain such an action, have declared that the exercise of this right is against sound public policy."[13] Id., 84. The court reasoned that a child is generally protected from the infliction of injury by the "strong and almost universal bond of parental affection," and that in the rare instance where such is not the case, the

---

[13] The legislature departed from this public policy rationale in 1967, when it created a statutory exception to the parental immunity doctrine by enacting into law General Statutes § 52-572c, which gives an unemancipated minor a cause of action against a parent for the negligent operation of a motor vehicle, boat or aircraft. Section 52-572c provides: "In all actions for negligence in the operation of a motor vehicle, and in all actions accruing on or after October 1, 1979, for negligence in the operation of an aircraft or vessel, as defined in section 15-127, resulting in personal injury, wrongful death or injury to property, the immunity between parent and child in such negligence action brought by a parent against his child or by or on behalf of a child against his parent is abrogated."

child's recourse is to the criminal justice system and the power of the state to remove the child from the parent's home. Id., 85.

At the outset, we note that the defendant has not cited, and our research has not revealed, any case in which this court has extended the parental immunity doctrine to bar an action alleging intentional or willful parental misconduct. In *Dzenutis* v. *Dzenutis,* supra, 200 Conn. 295–96, however, we recognized by way of dicta that "[f]or intentional torts involving malicious or even criminal conduct . . . [parental immunity] has now been generally repudiated." More specifically, we have never considered whether the parental immunity doctrine should be extended to bar an action by a child against his or her parent for personal injuries arising out of sexual abuse, sexual assault or sexual exploitation of the child when he or she was a minor. See *Roberts* v. *Caton,* 224 Conn. 483, 491, 619 A.2d 844 (1993) (declining to decide this issue). We are confronted, therefore, with an issue of first impression.

This court has indicated its reluctance to abandon parental immunity in regard to the performance of acts involving parental care, supervision and discretion. *Dubay* v. *Irish,* 207 Conn. 518, 527, 542 A.2d 711 (1988). In *Dubay,* a seventeen year old unemancipated child overdosed on prescription medications that belonged to her mother. The conservator of the child's estate brought an action charging the mother with negligence. The facts revealed that the mother had attempted to hide the medications from her daughter and had reacted in a reasonable manner once the child became ill. Id., 520–21. In holding that the parental immunity doctrine barred the plaintiff's claim, we reasoned that "[c]ourts should not unnecessarily involve themselves in the day-to-day exercise of parental discretion regarding the upbringing and care of chil-

dren."[14] Id., 527. Although the Restatement (Second) of Torts recommends the abrogation of parental immunity; see footnote 10; it cautions against imposing liability when the parental conduct involves acts of supervision or discretion that are necessitated by the nature of the familial relationship between the parent and the unemancipated minor child.[15]

Nonetheless, Connecticut is among the states that have refused to extend the doctrine to cases of parental negligence at the parent's place of business. In *Dzenutis* v. *Dzenutis,* supra, 200 Conn. 290, we held that the doctrine did not bar an action for injuries sustained by an unemancipated minor that resulted from a negligent act of his parent occurring in the course of a business activity conducted by the parent away from the home. Id., 299–300. We reasoned that it would be incongruous to deny recovery "because of a familial relationship between the [child] victim and the [parent] tortfeasor for injuries caused by the breach of a duty owed to the general public upon which the relationship has no bearing." Id., 297, citing *Cummings* v. *Jackson,*

[14] See also *Ooms* v. *Ooms,* 164 Conn. 48, 316 A.2d 783 (1972) (parental immunity doctrine extends to parent's negligence in allowing child to cross highway alone); *Pettengill* v. *Pettengill,* 18 Conn. App. 557, 559 A.2d 240, cert. denied, 212 Conn. 808, 563 A.2d 1356 (1989) (father allowing daughter to ride on housing of lawn mower while in use was within realm of parental discretion with regard to the care, supervision and instruction of child and parental immunity extends to such parental discretion); *Jackson* v. *Johnson,* 9 Conn. App. 290, 518 A.2d 666 (1986), cert. denied, 202 Conn. 804, 519 A.2d 1208 (1987) (parental immunity extends to negligence actions brought by a child against a parent).

[15] 4 Restatement (Second), Torts § 895G, comment (k) provides in part: "Conduct involving the exercise of parental authority or supervision is essential to the parent-child relationship. This is also true of the performance of parental duties such as the use of care to provide a safe place to live or adequate necessaries or proper instruction and training. Parental discretion is involved, and to say that the standard of a reasonable prudent parent is applied should be to recognize the existence of that discretion and thus to require that the conduct be palpably unreasonable in order to impose liability."

57 Ill. App. 3d 68, 372 N.E.2d 1127 (1978). We additionally stated that because allowing the child to bring suit in such a case would be unlikely to disrupt family harmony, the purpose of the doctrine would not be served by applying it to those circumstances. Id.[16]

Similarly, we do not believe that the purpose of the doctrine would be served by extending it to shield a parent from a civil action alleging sexual abuse. Familial discord or dysfunction obviously exists where parental sexual abuse occurs. Therefore, the purpose of the preservation of family harmony cannot justify immunity in the case of sexual abuse of a child by a parent. *Hurst* v. *Capitell,* 539 So. 2d 264, 266 (Ala. 1989) ("[t]o leave children who are victims of such wrongful, intentional, heinous acts without a right to redress those wrongs in a civil action is unconscionable, especially where the harm to the family fabric has already occurred through that abuse . . . [and, therefore,] the purpose for that immunity is no longer served"); *Doe* v. *Holt,* 332 N.C. 90, 96–97, 418 S.E.2d 511 (1992) ("Where a parent has injured his or her child through a willful and malicious act, any concept of family harmony has been destroyed. Thus, the foremost public purpose supporting the parent-child immunity doctrine is absent, and there is no reason to extend the doctrine's protection to such acts."); *Wilson* v. *Wilson,* 742 F.2d 1004, 1005 (6th Cir. 1984) ("[s]uch an act of gross misconduct [such as parental sexual abuse] would be so destructive of a family's parental relations as to eliminate the . . . public policy behind the parental immunity rule").

Furthermore, there is a point at which parental conduct properly becomes a matter of public concern, and

---

[16] We also held in *Dzenutis* v. *Dzenutis,* supra, 200 Conn. 296, that the purpose of the doctrine was not served because liability insurance would ordinarily provide benefits to the child that his parent would otherwise be required to furnish from family resources. Allowing a child to bring an action in such a case was found unlikely to disrupt family harmony. Id.

sexual abuse, assault and exploitation are well within that realm. When a parent perpetrates such a crime upon his or her child, that act constitutes a breach of duty owed not only to the child, but to the public at large, and there is no reason to immunize such conduct from a civil action in damages merely because of the familial relationship. We conclude that the public policy of this state requires that the parental immunity doctrine not preclude a child victim of parental sexual abuse from vindicating his or her rights by bringing an action for damages.

Contrary to the opinions expressed in *Mesite* v. *Kirchenstein,* supra, 109 Conn. 77, and *Hewlett* v. *George,* supra, 68 Miss. 703, redress is not necessarily available for this type of misconduct through the criminal justice system. The conduct may not be brought to the attention of the state within the time limits of the criminal statute of limitations[17] because of the child's continued dependency on the parent. Also, the child may not recognize the wrong for many years because children often accept unquestioningly the actions of their parents. Finally, as in the present case, the plaintiff may allege facts that are claimed to have been blocked from conscious memory for many years.

The Connecticut legislature has recently recognized that child victims of sexual assault often do not come forward with a complaint until well after they have reached their majority. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1991 Sess., pp.

---

[17] General Statutes § 54-193a as amended by Public Acts 1993, No. 93-340, provides: "Notwithstanding the provisions of section 54-193, no person may be prosecuted for any offense involving sexual abuse, sexual exploitation or sexual assault of a minor except within two years from the date the victim attains the age of majority or within five years from the date the victim notified any police officer or state's attorney acting in his official capacity of the commission of the offense, whichever is earlier, provided in no event shall such period of time be less than five years after the commission of the offense."

1125–29, 1132–47; 34 H.R. Proc., Pt. 13, 1991 Sess., pp. 4702–708; 34 S. Proc., Pt. 7, 1991 Sess., pp. 2494–97. By enacting No. 91-240 of the 1991 Public Acts (P.A. 91-240), the legislature extended the statute of limitations for civil actions in which persons seek damages for injuries caused by childhood sexual abuse, exploitation or assault. General Statutes § 52-577d had previously limited the commencement of an action in damages for such abuse to not later than two years from the date the victim had attained the age of majority, except that no action could be brought more than seven years from the date of the act complained of. The statute, by virtue of the enactment of P.A. 91-240, now permits a cause of action to be commenced up to seventeen years after the victim reaches majority.[18]

The defendant argues that if the legislature wanted to remove the shield of parental immunity from acts of sexual abuse, it would have done so in P.A. 91-240. We note, however, that the testimony before the Judiciary Committee in a hearing concerning P.A. 91-240 included the testimony of victims of parental sexual abuse who clearly assumed that the extension of the statute of limitations would apply to individuals such as themselves, an assumption that was never questioned by any committee member. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1991 Sess., pp. 1125–29, 1132–47. During those hearings, Representative William Varese specifically indicated to a survivor of parental sexual abuse who testified at the hearings that she would not be covered under the proposed bill because she had not remembered the sexual

---

[18] General Statutes § 52-577d provides: "Notwithstanding the provisions of section 52-577, no action to recover damages for personal injury to a minor, including emotional distress, caused by sexual abuse, sexual exploitation or sexual assault may be brought by such person later than seventeen years from the date such person attains the age of majority."

abuse she had suffered as a child until she was forty-five years old, well beyond even the extended statute of limitations. Id., p. 1136. Nothing was mentioned by any committee member regarding lack of legal recourse for a child who was the victim of parental sexual abuse because of the parental immunity doctrine. Therefore, the legislative history indicates that at least some legislators considered victims of parental sexual abuse to be within the group covered by the expanded statute of limitations.

Furthermore, in enacting P.A. 91-240, the legislature could reasonably have believed that the common law of the state would not shield a parent from an action based on an intentional tort because parental immunity had never been applied to such an act. This is underscored in *Dubay* and *Dzenutis* where, in dicta, we stated that the doctrine has been rejected generally in cases of willful, wanton or reckless parental misconduct. *Dubay* v. *Irish,* supra, 207 Conn. 532 n.7; *Dzenutis* v. *Dzenutis,* supra, 200 Conn. 295–96.

Other than *Roller* v. *Roller,* supra, 37 Wash. 242, which has been effectively overruled,[19] the defendant has cited only one case that extended parental immunity to bar a child's action for parental sexual abuse and that case was voluntarily dismissed upon appeal.[20] We find more persuasive the reasoning of cases from other jurisdictions that have concluded that the purpose of the doctrine would not be served by extending it to intentional acts of sexual abuse because there is no harmony to preserve in a family that harbors an abusive parent. See *Wilson* v. *Wilson,* supra, 742 F.2d 1004; *Barnes* v. *Barnes,* 603 N.E.2d 1337 (Ind. 1992); *Doe* v. *Holt,* supra, 332 N.C. 90; *Hurst* v. *Capitell,* supra, 539 So. 2d 264.

---

[19] See footnote 6.

[20] *Richards* v. *Richards,* 599 So. 2d 135 (Fla. App.), dismissed, 604 So. 2d 487 (Fla. 1992).

Accordingly, the certified question is answered: "No; the parental immunity doctrine does not bar an action by a minor child against his or her parent for personal injuries arising out of sexual abuse, sexual assault or sexual exploitation."

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.