[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION TO STRIKE DEFENDANTS'SECOND SPECIAL DEFENSE
This case is a civil action for personal injuries based on alleged exposure to lead-based paint. The plaintiffs are Nicole Norwood and Shon-Sharay Norwood, minor children who have brought this action through their mother Kim Norwood as next friend and prochein ami. The defendants Melvin Gordon and Zelma Gordon [the Gordons] are owners of record, landlords and otherwise in control of real property identified as 177-179 Westland Street, Hartford, Connecticut.
In the first and second counts of the Amended Complaint dated July 1, 1996, sounding in negligence per se and negligence, the plaintiffs have alleged that they resided at 177-179 Westland Street from October 1992 through February 1995 where they were exposed to dangerous, hazardous and toxic levels of lead paint (¶ 5). Among other things, the minor plaintiffs seek damages for "bills and expenses for medical care and treatment" (¶ 8 (j)).
In their answer dated September 3, 1996, the Gordons have raised the following special defense to the first and second counts:
SECOND SPECIAL DEFENSE TO FIRST COUNT AND SECOND COUNT:
 Insofar as plaintiffs claim reimbursement for medical treatment, health and remedial care incurred by their parent, or which is claimed to be incurred in the future, said damages were caused in whole, or in part by the negligence and/or carelessness of the plaintiffs' parent, Kim Norwood, in one or more of the following respects: CT Page 4555
 a. In that she failed to exercise reasonable and proper care for the safety of her minor children;
 b. In that she failed to supervise her minor children;
 c. In that she failed to provide a safe environment for her minor children to be raised;
 d. In that if the plaintiffs resided in the subject premises as alleged in the complaint, the plaintiff failed to notify the defendants . . . that minor children were residing in the premises when the same would have been reasonable under the circumstances.
The plaintiffs have moved to strike this special defense on four grounds: (1) A special defense that attempts to impute alleged parental negligence to defeat the claims of a minor plaintiff is legally insufficient. (2) The special defense is barred by the doctrine of parental immunity. (3) As a matter of law, any alleged negligent act of the parent cannot be the proximate cause of the minor plaintiffs' injuries. (4) The defendants have failed to allege sufficient facts to establish that the plaintiffs and their mother had actual or constructive notice of any potential lead hazards.[1] The Gordons have not directly responded to these claims but argue that they are permitted to raise defenses against the parent in the childrens' action which would be available against the parent in an independent action brought by the parent to recover consequential damages.
A motion to strike may be used to challenge a special defense. Nowak v. Nowak, 175 Conn. 112, 116, 394 A.2d 716 (1978). See also Connecticut National Bank v. Voog, 233 Conn. 352,354-55, 659 A.2d 172 (1995); Krasnow v. Christensen,40 Conn. Sup. 287, 288, 492 A.2d 850 (1985). The motion to strike
"admits all facts well pleaded; it does not admit legal conclusionsor the truth or accuracy of opinions stated in the pleadings." (Emphasis in original.) Mingachos v. CBS, Inc., 196 Conn. 91,108, 491 A.2d 368 (1985).
The Gordons argue that because the second special defense "is specifically limited to any claim that is asserted by these minor children for medical care and treatment incurred by their mother CT Page 4556 or to be incurred [by her] in the future" they may assert a defense of parental negligence as if the claim had been independently brought by the parent. See Defendant's Objection to Motion to Strike dated Oct. 23, 1996. They claim that Conn. Gen. Stat. § 52-204[2], which allows the minor plaintiffs to directly recover such consequential damages in a personal injury case, creates a circumstance similar to that in a subrogation case and thus permits the assertion of defenses against the minor. plaintiffs' mother although she is not a party to this action, seeks no recovery on her own behalf and is barred by § 52-204 from seeking such recovery. The Gordons argue that a parent's pre-existing statutory liability for the cost of a minor child's medical and hospital care, Conn. Gen. Stat. § 46b-36, is analogous to an insurance company's pre-existing liability to cover the expenses of an injured party making the situation "identical" to subrogation cases.
Subrogation, however, does not provide a workable analytical model to apply to § 52-204. Subrogation derives from the equitable principle that one who pays the debt of another has rights to collect from that party. The rights of parents and children to recover against third-party tortfeasors, as well as the limitations on a child's ability to recover from his or her parent, cannot be fit into that model nor is it necessary to do so in light of the common law and § 52-204.
"Subrogation may be broadly defined as the substitution of one person in the place of another with reference to a lawful claim or right. . . . It is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it." 73 Am.Jur.2d, Subrogation, § 1. Subrogation is "a legal fiction through which one who, not as a volunteer or in his own wrong and where there are no outstanding and superior equities, pays the debt of another, is substituted to all the rights and remedies of the other." Home Owners' LoanCorp. v. Sears. Roebuck Co., 123 Conn. 232, 238, 193 A.2d (1937).
There are two types of subrogation under the law: conventional and equitable. Westchester Fire Ins. Co. v. Allstate Ins. Co.,236 Conn. 362, 672 A.2d 939 (1996). "Conventional subrogation can take effect only by agreement and has been said to be synonymous with assignment. It occurs where one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the rights and securities of the creditor so CT Page 4557 paid." Id. at 370-71, quoting 73 Am.Jur.2d 599, Subrogation § 2 (1974 and 1995 Sup. ). Conventional subrogation is inapplicable to the parent-child relationship. Equitable subrogation derives from the equitable principle against unjust enrichment.Westchester, supra, 236 Conn. 370-71 n. 7. "By contrast [to conventional subrogation], the right of equitable subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect." (Citations omitted; internal quotation marks omitted.) Westchester, supra,236 Conn. 371.
Equitable subrogation exists when A, who is not acting as a volunteer, pays for damage to B caused by C for which C should, in equity and good conscience, be held liable. The doctrine provides a method for A to recover against C when A otherwise might not have any recourse. Id. at 371-73. A's rights to recover as subrogee, however, are limited to the rights of B, the subrogor. "The principle of substitution in subrogation actions refers . . . to the substitution of the subrogee for the subrogor." Home Insurance Co. v. Aetna Life Casualty Co.,235 Conn. 185, 196, 663 A.2d 1001 (1995). A, effectively, "steps into the shoes" of B, and any defense which C has against B is good against A. Wilkinson v. Boats Unlimited. Inc., 236 Conn. 78, 88,670 A.2d 1296 (1996).
Applying the subrogation model to this case, the minor plaintiffs are B, since they are claiming injury, the Gordons, as the alleged tortfeasors, are C, and Kim Norwood, the plaintiffs' mother, is A because she is obliged to support the minor children and pay their medical expenses. Thus, a subrogation model would allow Kim Norwood (A) to step into the shoes of the children (B) to recover any monies she has expended from the tortfeasors (C). But since Norwood would stand as subrogee, the children remain the real parties in interest and only those defenses that could be raised against the children would be available against Norwood. Thus, under the subrogation model, claims against Norwood could not be asserted as defenses.
This rather lengthy discussion demonstrates that the subrogation model clearly does not apply to this case. Norwood has no need to seek recourse under the doctrine because under the common law parents (A) have always had the right to recover against tortfeasors (C) for consequential damages resulting from injuries caused to their children (B). Moreover, Norwood has CT Page 4558 chosen to waive her rights to recover in favor of her children and she is not a party to this lawsuit.
Likewise, the subrogation model does not apply to a child's direct right to recover consequential damages in his or her own lawsuit as provided under § 52-204. That statute simply codified the common law rule that allowed a parent to waive his right to recover consequential damages in favor of the child. It cannot be read to mean that the child, in his own personal injury suit, stands as a subrogee limited to recovering only that which the parent could recover and subject to the defenses that could be raised against the parent. The child cannot be deemed a subrogee because the child has not paid for his medical expenses and thus is not a "person, not acting as a mere volunteer or intruder, [who] pays a debt for which another is primarily liable. . . ." Westchester, supra, 236 Conn. at 371. The child remains the injured party to whom the tortfeasor owes a direct duty of recompense. Having chosen to bring an action in which the children are the only plaintiffs, the children can recover all their damages directly from the tortfeasor without resort to the legal fiction of subrogation by virtue of the provisions of §52-204.
The provisions of § 52-204 are consistent with the common law regarding a child's ability to recover consequential damages in his or her own action. At common law, two causes of action arise when a minor is injured by the negligent act of a third party: the minor's action to recover for the personal injuries and the parents' action to collect for consequential damages such as medical expenditures and 1088 of services. Dzenutis v.Dzenutis, 200 Conn. 290, 308, 512 A.2d 130 (1986). Although the parent's right to recover is sometimes described as "independent of the right of the child," Shiels v. Audette, 119 Conn. 75, 77,174 A. 323 (1934), it does not exist in a vacuum. Indeed, "an essential element of the cause of action vested by law in the parent is that the compensation recoverable . . . for expenses flows from a personal injury for which, under the law, the child would be entitled to recover compensation. . . . If the child was not entitled to recover compensation for his injury, there can be no recovery by the parent." Id.[3] Under the common law, moreover, a child could recover the entire amount of damages, including consequential damages, in an action brought in the child's name. Carangelo v. Nutmeg Farm Inc., 115 Conn. 457, 461,162 A. 4 (1932); Kenure v. Brainerd Armstrong Co.,88 Conn. 265, 267, 91 A. 185 (1914). Thus, whether § 52-204 is viewed CT Page 4559 as a .modification of the common-law," see Botelho v. Curtis,28 Conn. Sup. 493, 497, 267 A.2d 675 (1970), or simply the codification of the parent's common law right to waive or relinquish the claim in favor of the child,[4] "the exclusive right of the minor plaintiff . . . to recover the consequential damages] must be recognized and respected." Id. When suit is brought in the name of the child alone, even through his or her parent as a next friend, the right to recover all damages belongs to the child alone and the parent is barred from any recovery.
It has long been held in this state that "whether parents are negligent or not . . . is an immaterial question in a suit by the child for injury to it[,]" Murphy v. Derby Street Railway Co.,73 Conn. 249, 252, 47 A. 120 (1900), citing Daley v. Norwich W.R.Co., 26 Conn. 591, 598 (1858), and cannot bar the minor plaintiff's recovery. Wilmot v. McPadden, 78 Conn. 276, 284,61 A. 1069 (1905). Therefore, Norwood's negligence, if any, cannot be imputed to the minor plaintiffs. Other judges of this court have stricken similar special defenses in lead paint cases on this ground. See Kol v. Novella, Superior Court, judicial district of Danbury, Docket No. 318511 (Feb. 27, 1996, Stodolink, J.); Diaz v. Tavares, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 393670 (Oct. 29, 1993, Wagner, J.).
Since the right to recover for all damages in this case belongs to the minor plaintiffs exclusively, the issue of whether the contributory negligence of a parent may be asserted as a defense in an independent action brought by the parent is not before the court. Thus, Miller v. Lamoureaux, 26 Conn. Sup. 274,220 A.2d 776 (1965), cited by the defendant, where the parent brought an independent claim, is inapposite. Likewise, Ankiewiczv. Kinder, 408 Mass. 792, 563 N.E.2d 684 (1990), in which the Massachusetts Supreme Judicial Court allowed a third-party claim for contribution against the minor plaintiff's mother premised on parental negligence in a lead paint action, over the vigorous dissent of Chief Justice Liacos, provides little support in light of that jurisdiction's abrogation of the parental immunity doctrine.[5]
Connecticut, however, continues to affirm its adherence to the doctrine of parental immunity. See Squeglia v. Squeglia,234 Conn. 259, 661 A.2d 1007 (1995); Dubay v. Irish, 207 Conn. 518,522-28, 542 A.2d 711 (1988). Although the doctrine has been CT Page 4560 modified by statute and modern case law to provide for liability in the negligent operation of a motor vehicle, aircraft or waterborne vessel, Conn. Gen. Stat. § 52-572c, in the negligent conduct of a business, Dzenutis, supra, 200 Conn. 290, or for sexual assault, abuse or exploitation, Henderson v.Woolley, 230 Conn. 472, 644 A.2d 1303 (1994), parents remain immune from liability "in the area of parental supervision and discretion with respect to the care and control of a minor child." Squeglia, supra, 234 Conn. at 269; Henderson, supra,230 Conn. at 480; Dubay, supra, 207 Conn. at 527.
Indeed, many jurisdictions that have abrogated the parental immunity doctrine under most circumstances have retained limited immunity for claims involving the exercise of parental supervision or discretion. See, e.g., Ashley v. Bronson,189 Mich. App. 498, 473 N.W.2d 757 (1991); Jenkins v. SnohomishCounty Public Utility Dist. No. 1, 105 Wash.2d 99, 713 P.2d 79
(en banc 1986); Wagner v. Smith, 340 N.W.2d 255 (Iowa Supreme Court en banc) (1983); Foldi v. Jeffries, 93 N.J. 533,461 A.2d 1145 (1983); Holodook v. Spencer, 36 N.Y.2d 35, 364 N.Y.S.2d 859
(1974); see generally Annot. "Liability of Parent for Injury to Unemancipated Child Caused by Parent's Negligence — Modern Cases," 6 ALR4th 1066 (1981). Even the Restatement (Second) of Torts § 895G, comment (k), cautions against abrogating parental immunity for acts "involving the exercise of parental authority or supervision . . . [and] the performance of parental duties such as the use of care to provide a safe place to live or adequate necessaries or proper instruction and training." SeeHenderson, supra, 230 Conn. at 481 and n. 15.
The purpose of the doctrine of parental immunity "is to preserve the integrity and unity of the family and to avoid unnecessarily injecting `the machinery of the state' into the day-to-day exercise of parental discretion." Squeglia, supra,234 Conn. at 265.
 The supervision, care and instruction of one's child involves issues of parental control, authority and discretion that are uniquely matters of a very personal type. Schneider v. Coe, supra, 684. "Each parent has unique and inimitable methods and attitudes on how children should be supervised. Likewise, each child requires individualized guidance depending on intuitive concerns which only a parent can understand. Also, different cultural, educational and financial CT Page 4561 conditions affect the manner in which different parents supervise their children. Allowing a cause of action for negligent supervision would enable others, ignorant of a case's peculiar familial distinctions and bereft any standards, to second-guess a parent's management of family affairs . . ." Paige v. Bing Construction Co., 61 Mich. App. 480, 485, 233 N.W.2d 46 (1975); see also Cherry v. Cherry, 295 Minn. 93, 95, 203 N.W.2d 352
(1972).
 Dubay, supra, 207 Conn. at 527.
The allegations against Kim Norwood in the Second Special Defense involve her failure to provide proper care, supervision and a safe home environment for her children — areas which fall "directly within the scope of claims the doctrine is intended to bar." Squeglia, supra, 234 Conn. at 270. Thus, even if this were a case in which the contributory negligence of the parent could be considered, cf. Kol v. Novella, supra, the Second Special Defense would be legally insufficient because it alleges no more than the negligent exercise of parental supervision and discretion. See Navaro v. Ieraci, 214 App.Div.2d 713, 625 N.Y.S.2d 642
(1995) (Affirmative defense of parent's negligent supervision was properly dismissed in a lead poisoning case).
Accordingly, for the reasons stated above, the plaintiffs' motion to strike the Gordons' Second Special Defense is granted.
LINDA K. LAGER, JUDGE