# Staunton

## W. F. WORRELL, DOING BUSINESS AS BLUE RIDGE BUS LINES V. RUTH WORRELL.

September 13, 1939.*

Record No. 2125.

Present, All the Justices.

*Rehearing refused November 20, 1939.

*Sinnott & May* and *V. P. Randolph, Jr.*, for the plaintiff in error.

*Jones & Woodward* and *S. B. Campbell*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

W. F. Worrell, the plaintiff in error, hereinafter referred to as the defendant, owns and operates, under the name of the Blue Ridge Bus Lines, a public motor vehicle carrier service between Galax and Pulaski, Virginia. Ruth Worrell, hereinafter referred to as the plaintiff, is the daughter of W. F. Worrell.

On March 24, 1937, Miss Worrell, while a passenger on a bus operated by the Blue Ridge Bus Lines, over its regular route on scheduled service, was seriously injured in a collision between the bus and a motor truck. The bus was a 1931 Buick sedan passenger automobile, driven and operated by Aaron Higgins, an employee of W. F. Worrell. The truck was owned by Don Cochrane, and operated by his brother, M. L. Cochrane.

Miss Worrell who was twenty years of age at the time of the accident, was a student at Lynchburg College, Lynchburg, Virginia, where she had been in attendance for one year and two quarters. When not at school, she lived at her home in Galax with her father, who maintained and supported her.

She had gone home in March, 1937, and on the day of the accident was returning to college. She had been furnished a through ticket by her father for transportation over the Blue Ridge Bus Lines to Pulaski, and thence by a connecting bus line to Lynchburg. The ticket for the entire journey was paid for by her father. She started on her journey in the afternoon, and rode in the front seat next to the driver, other passengers occupying the rear of the car.

The record contains the following stipulation:

"It is stipulated, subject to objection on the part of counsel for the defendant, that the defendant Worrell would testify that he notified his insurance carrier of the happenings of the accident, prior to the giving of these statements, and that he subsequently notified the insurance company of the pendency of this suit, and this suit is being defended by the insurance company.

"The defendant objects to the admissibility before the judge of this evidence, on the question of admissibility of the statements in evidence."

The trial court declined to admit before the jury the evidence of Worrell as set out in the stipulation, in application of the rule that no mention of insurance could be made to the jury. The plaintiff excepted to this ruling.

This action was brought against W. F. Worrell, doing business as the Blue Ridge Bus Lines, and Aaron Higgins, jointly. The jury returned a verdict against both defendants, and fixed the damages at $5,000. The verdict was approved by the trial court and judgment entered thereon. Higgins does not contest the judgment. W. F. Worrell asks us to reverse it, and enter final judgment in his favor.

The defendant, W. F. Worrell, assigns three grounds of error: (1) That the evidence failed to show that the negligence of the bus driver was the proximate cause of the accident; (2) that the plaintiff was bound by her own evidence, which freed the bus driver from negligence; and (3) that the plaintiff, being an unemancipated minor, could not recover against her father.

Since the defendant concedes in his brief and argument before us that there was evidence of Higgins' negligence, and that the evidence of the truck driver to that effect was alone sufficient to sustain the verdict, it is unnecessary to go into the details of the accident. The testimony of several disinterested witnesses and the physical facts not only strongly corroborate the truck driver's account of the collision, but afford ample proof of gross negligence on the part of the bus driver. The defendant, however, seeks to

avoid the effect of all of this on the ground that the plaintiff had, before the trial, made certain written statements which absolved the driver of the bus from negligence.

On direct examination, the plaintiff testified that the bus was going fast, and that she did not pay any attention to which side of the road it was on and could not give the location of the two cars at the time of the collision. She further said, "The first thing I knew we were on the truck and it looked like a mountain to me." It developed on cross-examination, that on April 21, 1937, she had given two written statements of the accident to a representative of an insurance company which carried public liability coverage for her father as the owner of the bus line. These statements, one of them in her own handwriting and the other written by someone else and signed by her, were made without any notice to interested parties. The trial court refused to permit the *ex parte* statements to be introduced in evidence by virtue of Virginia Code 1936, section 6216. It, however, allowed counsel, over the objection of the plaintiff, to examine the witness from the written statements. She admitted that she had said in the written statements that the bus was on its proper side of the road, that the truck was cutting the curve, that the bus driver did everything in his power to avoid the accident, and that it was not his fault. She then explained and qualified these statements, saying, that it was because the bus had safely passed two cars going in the opposite direction shortly before the collision she had "thought" it must have been on its right side of the road, and that what she meant to say, about the actions of the driver of the bus, was that he did everything he could to avoid the collision after he realized the danger of the situation. She had already testified, "I could not see the truck until we were on it and it all happened so quickly I couldn't say definitely where we were or where he was."

The defendant contends that the written statements, which Miss Worrell admitted she made, exonerated the driver of the bus from negligence. He relies upon the

familiar principle that a plaintiff cannot make out a better case than she herself has testified to, citing *Massie* v. *Firmstone,* 134 Va. 450, 114 S. E. 652; *Thalhimer Brothers* v. *Casci,* 160 Va. 439, 168 S. E. 433, and related cases.

Without ruling upon the admissibility of the admissions secured by the use of a portion of the *ex parte* written statements, since no cross-error has been assigned, we do not think that the application of the rule contended for can be extended to the circumstances and facts of this case.

Here a collision occurred with only a moment of warning. The uncontradicted evidence of the plaintiff is that she was, at that time, paying no attention to the speed or location of the cars on the road. Her evidence disclosed a lack of knowledge of facts, which were necessary to support her conclusions. Her written statements were expressions of opinion, subject to explanation and contradiction. They were but *ex parte* admissions at best. They do not constitute evidence upon which she asks for a recovery. She does not ask the jury to believe them as based upon facts within her knowledge, nor to disbelieve her testimony given in open court. Rather she asks that she be believed when she says she did not know the material facts upon which she based the opinion expressed in her written statements. Her testimony before the jury is not in conflict with her other witnesses as to the negligence of the bus driver nor as to the physical facts surrounding the collision.

The rule contended for by the defendant is based upon instances where a plaintiff testifies in court to facts within his knowledge, and upon which his case turns. The *ex parte* written statements of Miss Worrell did not constitute testimony before the jury. They only affected the weight and value of her testimony so far as they were contradictory. Considered as admissions against interest, they were not conclusive, but subject to explanation and entitled to such weight as the jury might give them.

The principal ground of defense is that an unemancipated minor child cannot maintain an action against his or her

parent to recover for personal injuries resulting from the latter's act of negligence.

The peculiar facts of this case make it one of first impression in Virginia. A careful examination of authority and precedent discloses that there are no English decisions, under the common law, pronouncing a specific rule forbidding a child to sue its parent for personal tort, although the common law recognized the right of a child to maintain an action against its parent in matters of property. We do not find the principle sought to be invoked appearing in any American case prior to 1891. 43 Harvard Law Review, 1056 et. seq. (1929-30) ; 19 Virginia Law Review, 730 et seq. (1932-33).

The case of *Hewellette* v. *George* (1891), 68 Miss. 703, 9 So. 885, 13 L. R. A. 682, is the first in this country to declare the doctrine denying an infant the right to sue its parent for a tort. There the child complained that she had been wrongfully imprisoned in an insane asylum by her mother. On the ground that such an action disturbed the domestic peace and harmony of the family and was contrary to public policy, relief was denied. The rule there announced was thereafter followed generally, but often with reservations and distinctions. *Mesite* v. *Kirchstein,* 109 Conn. 77, 145 A. 753; *Foley* v. *Foley,* 61 Ill. App. 577; *Smith* v. *Smith,* 81 Ind. App. 566, 142 N. E. 128; *Elias* v. *Collins,* 237 Mich. 175, 211 N. W. 88, 52 A. L. R. 1118; *Taubert* v. *Taubert,* 103 Minn. 247, 114 N. W. 763; *Miller* v. *Pelzer,* 159 Minn. 375, 199 N. W. 97, 33 A. L. R. 678; *Mannion* v. *Mannion,* 3 N. J. Misc. 68, 129 A. 431; *Damiano* v. *Damiano,* 6 N. J. Misc. 849, 143 A. 3; *Sorrentino* v. *Sorrentino,* 248 N. Y. 626, 162 N. E. 551; *Ciani* v. *Ciani,* 127 Misc. 304, 215 N. Y. S. 767; *Small* v. *Morrison,* 185 N. C. 577, 118 S. E. 12, 31 A. L. R. 1135; *Matarese* v. *Matarese,* 47 R. I. 131, 131 A. 198, 42 A. L. R. 1360; *McKelvey* v. *McKelvey,* 111 Tenn. 388, 77 S. W. 664, 64 L. R. A. 991, 102 Am. St. Rep. 787, 1 Ann. Cas. 130; *Roller* v. *Roller,* 37 Wash. 242, 79 P. 788, 68 L. R. A. 893, 107 Am. St. Rep. 805, 3 Ann. Cas. 1; *Wick*

v. *Wick*, 192 Wis. 260, 212 N. W. 787, 52 A. L. R. 1113. See also, notes in 31 A. L. R. 1157 and 71 A. L. R. 1071.

█ The foundation for the rule applied in these cases is based upon the recognition of the right of parents to have the custody, control and direction of their infant children in maintaining authority over the family establishment, and of a public policy to deny the exercise of any right that tends to disturb the peace and tranquillity of the home, or disrupt the voluntary and natural course of disposal of the parents' exchequer.

The rule has been applied to the extent that a child could not recover against a partnership composed of her father and another for the negligence of her father as the driver of an automobile owned by the partnership and operated in its business, even though the partnership carried liability insurance, upon the ground that since there was no liability against the father, there was none against his partner as a member of the partnership, and none, therefore, against the insurer. *Belleson* v. *Skilbeck* (1932), 185 Minn. 537, 242 N. W. 1. Upon the same principle, where the common law rule as to the wife's rights had not been abrogated, a partnership has been held not liable for the tort of a member of the partnership against his wife for an injury inflicted in pursuance of the partnership's business purposes. *David* v. *David, et als.* (1932), 161 Md. 532, 157 A. 755, 81 A. L. R. 1100; *Caplan* v. *Caplan, et als.* (1935) 268 N. Y. 445, 198 N. E. 23, 101 A. L. R. 1223.

Recovery in each of the last above three cases was denied upon the ground that a partnership is not an entity in law separate from its individual members. These cases are thus distinguished from those hereinafter cited, which allow an infant to recover against a master for injuries inflicted by the father in the service of the master. *City of Danville* v. *Howard, infra; Chase* v. *New Haven, etc., Corp., infra.*

Support for the rule is sought on the suggested analogy between an action by a wife against her husband for personal injury, and an action by a child against its parent for

a personal tort committed by the parent. The common law rule forbidding a wife to maintain an action against her husband for a personal tort committed by him against her during the coverture has been followed in most of the States until the enactment of the so-called Married Women's Acts, placing the wife, in her personal and property rights, upon a parity with her husband. In Virginia, in the absence of any statute in contravention of the common law rule, we have denied the wife the right to sue her husband for personal injuries resulting from his tort. *Keister* v. *Keister* (1918), 123 Va. 157, 96 S. E. 315.

We do not think that the suggested analogy of husband and wife to that of parent and child affords support for the rule. The distinction is clear. The relation of husband and wife is created by law, that of parent and child by nature. While at common law, and except as changed by statute, there is a conception of the legal unity of husband and wife, neither at common law nor under our statute is there a conception of the legal identity of parent and minor child, either in their persons or in their property rights. Harvard Law Review, *supra.*

In later years, economic, social and legislative changes have caused a judicial reaction to the earlier views. Modern methods of business, new or enlarged occupational capacities and the advent of the automobile and liability indemnity insurance have placed the parties in a different position. Therefore, the effect of the earlier decisions must be considered in relation to the occasion, facts and laws upon which they were based. A correct determination of each case must necessarily depend upon its facts and circumstances and the law applicable thereto. Rules of thumb must give way to rules of reason.

We find the first note in conflict with the earlier rule sounded by Chief Justice Clark, in *Small* v. *Morrison, supra,* decided in 1923, in which he reviewed the history and reason of the rule, and the fallacy of its application under changed conditions.

In *Wick* v. *Wick, supra,* which involved similar facts to the case of *Small* v. *Morrison, supra,* and was decided the same way, one of the justices filed an equally vigorous dissent.

In *Sorrentino* v. *Sorrentino* (1928), *supra,* a denial of a cause of action for negligence was affirmed by the Court of Appeals of New York, but without opinion, in which denial Chief Justice Cardozo and two other judges recorded their dissents.

In *Lusk* v. *Lusk, et al.* (1932), 113 W. Va. 17, 166 S. E. 538, the facts were very similar to those in the instant case. There the plaintiff, an unemancipated minor, resided with her father, who owned a bus and operated it under a contract with the board of education to transport children to and from school. The contract bound Lusk to carry his passengers safely. He and the school board carried an indemnity insurance policy which insured them against loss and expense arising from claims for damages "of any person" except their employees for bodily injuries, etc., in consequence of an accident attributable to the operation of the bus. The provision of the West Virginia Code required that he should carry liability insurance, satisfactory to the State Road Commission, in such form as the Commission deemed necessary to adequately protect the public.

The plaintiff, while sitting on the front seat of the bus going to school, was injured by the bursting of a defective rubber water hose connection. To the defense that the minor child could not maintain an action against her father, the court said:

"But a different situation arises where the parent is protected by insurance in his vocational capacity. The rule followed in the *Securo Case* (*Securo* v. *Securo* 110 W. Va. 1, 156 S. E. 750) concedes the commission of a civil wrong on the child by the parent, but palliates the wrong (in case of passive negligence) in the interest of parental discipline and control and of domestic harmony. A wise provision when so confined and where pertinent to the case. McCurdy, 43 Harv. L. R. 1079, sec. 5. But as was said in the case

of *Dunlap* v. *Dunlap,* 84 N. H. 352, 150. A. 905, 910, 71 A. L. R. 1055, 'The law does not make fetishes of ideas,' and we must not exalt this rule above ordinary common sense. A maxim of the common law (and of the ages for that matter) is when the reason for a rule ceases the rule itself ceases (*cessante ratione legis cassat ipsa lex*). There is no reason for applying the rule in the instant case. This action is not unfriendly as between the daughter and the father. A recovery by her is no loss to him. In fact, their interests unite in favor of her recovery, but without hint of 'domestic fraud and collusion' (charged in some cases). There is no filial recrimination and no pitting of the daughter against the father in this case. No strained family relations will follow. On the contrary, the daughter must honor the father for attempting to provide compensation against her misfortune. Family harmony is assured instead of disrupted. A wrong is righted instead of 'privileged'.

"When no need exists for parental immunity, the courts should not extend it as a mere gratuity. Without such an extension, nothing stands in the way of this action. It is familiar law that a child may bring to account the parent for wrongful disposition of the child's property. It must not be said that courts are more considerate of the property of the child than of its person (when unaffected by the family relationship). * * * The plaintiff must still establish the liability of the father (stripped of parental immunity) for her injury. When she does so, the guaranty company becomes responsible directly to her for the recovery."

In *Dunlap* v. *Dunlap* (1930), *supra,* it was held that a child may recover against his parent for injuries sustained while in the employ of his father as a workman. The evidence showed an agreement between the father and the child that the latter would work during the summer vacation in the former's business at the same wages paid to other workmen, less deduction for his board at home. The father paid premiums on employer's liability insurance which were computed in part on the child's wages. The court held that there was a contract of employment and that the father

intended to assume the full liability of a master. Chief Justice Peaslee exhaustively reviewed the history of the principle involved, and the cases hereinbefore cited supporting the rule. He answers in detail and with forceful logic the usual reasons assigned to prevent recovery.

The New Hampshire court based its holding not only on the effect of a change of relation from parent and child to that of master and servant, but upon the fact that the insurance taken out by the father, providing for the satisfaction of a judgment against him, removed the elements which were usually held to justify the application of the rule favoring the immunity of the parent. In conclusion, that court said [84 N. H. 352, 150 A. 915, 71 A. L. R. 1055]:

· "Such immunity as the parent may have from suit by the minor child for personal tort arises from a disability to sue, and not from lack of violated duty. This disability is not absolute. It is imposed for the protection of family control and harmony, and exists only where a suit or the prospect of a suit might disturb the family relations. Stated from the viewpoint of the parent, it is a privilege, but only a qualified one. It is not an answer to a suit for an intentional injury, maliciously inflicted. It does not apply to an unemancipated child, or to a case where liability in fact has been transferred to a third party."

The defendant relies upon the case of *Norfolk Southern Railroad Company* v. *Gretakis* (1934), 162 Va. 597, 174 S. E. 841. The minor child of Gretakis was injured in a collision between an automobile driven by her father and a train of the Norfolk Southern Railroad Company, as a result of the concurrent negligence of the father and the railroad company. The father was fully covered by liability insurance, in a solvent insurance company, which provided that any judgment or decree against him would be paid by that company. The minor child sued the railroad company and recovered. Thereafter, the railroad company sued the parent for contribution as a wrongdoer, and alleged that the father was protected against liability. One of the grounds of demurrer was that the infant daughter could not sue her

parent, and since there was no liability on the parent, there could be no contribution. The demurrer was sustained. This court held that the fact that the father carried liability insurance did not create any liability against the father which would not exist were he uninsured, and denied a recovery "for personal injuries resulting from an ordinary act of negligence."

In the above case, Mr. Justice Epes, speaking for the court, significantly said:

"This case is readily distinguishable from those cases in which the father has emancipated a minor child or has assumed to him, independent of the relation of father and child, the relation of a master to a servant, and from those cases in which an infant has been permitted to recover against the master of his father for the negligence of his father. For cases of these types see *City of Danville* v. *Howard*, 156 Va. 32, 157 S. E. 733; *Dunlap* v. *Dunlap*, 84 N. H. 352, 150 A. 905, 71 A. L. R. 1055; *Chase* v. *New Haven, etc., Corp.*, 111 Conn. 377, 150 A. 107, 68 A. L. R. 1497. See also, *Poulin* v. *Graham*, 102 Vt. 307, 147 A. 698; *Schubert* v. *August Schubert Wagon Co.*, 249 N. Y. 253, 164 N. E. 42, 64 A. L. R. 293; Va. Law Rev., May 1933, pp. 730-735."

An examination of the cases cited in the above opinion discloses that the court had in mind the qualifications which attend the rule, that is, that the rule is not to be regarded as absolute, but qualified. Its reference to *Dunlap* v. *Dunlap, supra,* is informative and persuasive.

In *City of Danville* v. *Howard, supra,* a recovery was allowed for the death of an infant, who was killed as the result of the negligence of her father, an employee of the city, although the father, by reason of his contributory negligence, was not allowed to share in the recovery as a beneficiary.

In *Schubert* v. *August Schubert Wagon Company, supra,* it was held that a wife who was given, by statute, a right of action for injuries to her person, as if unmarried, may maintain an action against her husband's employer for in-

juries sustained through the negligence of her husband in the course of his employment.

In *Chase* v. *New Haven, etc., Corporation, supra,* an employer was held liable to an unemancipated minor child of an employee for an injury due to the latter's negligence while acting in the service of the employer, notwithstanding that the child could not maintain an action against the parent for the tortious act.

In *Poulin* v. *Graham,* 102 Vt. 307, 147 A. 698, where the wife sued the employer of her husband for a tort committed by the husband in pursuit of the master's business, the court held that while the liability of the master was purely of a derivative character, the right of the wife to proceed against him was in no sense subordinate or secondary to her right to sue her husband, the servant.

This brings us to a careful consideration of the peculiar facts in the instant case. W. F. Worrell, operating as the Blue Ridge Bus Lines, was a common carrier of passengers. His daughter, an infant, was a passenger on his bus at the time of the accident. She was seriously injured as the result of the negligence of an employee of the defendant.

Virginia Code 1936, section 4097y (12) provides for the issuance of permits to motor carriers by the State Corporation Commission, as follows:

"(a)   No certificate or permit shall be issued by the commission to any motor carrier until and after such motor carrier shall have filed with, and the same has been approved by, the commission, an insurance policy or bond in some insurance company, etc."

"(e)   The insurance bond * * * shall obligate the insurer or surety to pay any final judgment for damages sustained by the passengers, shippers or consignees for injury to passenger or passengers, or for loss or damage to property entrusted to such motor carrier and for any and all injuries to persons and loss or damage to property resulting from the negligent operation of any motor vehicle while operating in this state."

Unquestionably, it is the purpose of the Virginia statutes and the policy of this State to provide for the protection of the passengers of common carriers. The requirement that a common carrier, before it shall receive authority to do business, shall secure good and sufficient liability insurance for any and all injuries to persons resulting from the negligent operation of the carrier's vehicles is for the benefit and protection of the passengers. The statute requires it for that purpose. The carrier takes it out for that purpose, and the premium is paid for the same purpose. The requirement is compulsory and not voluntary.

In three respects this case differs from *Norfolk Southern Railroad Company* v. *Gretakis, supra.* Here the child occupied the position of passenger of a common carrier, the relation of parent and child being purely incidental; whereas, in the other case the father was not a common carrier and the relation of parent and child was in no wise changed. Here the insurance was compulsory, there it was voluntary. Here the negligence was occasioned by the act of an agent in the service of his master, and the liability of the father was derivative, there the injury was inflicted by a personal act of the father and another, while the child was under his immediate parental control and discipline.

The parents in the cases of *Elias* v. *Collins, supra,* and *Norfolk Southern Railroad Company* v. *Gretakis, supra,* carried liability insurance covering the operation of their automobiles. But in neither of these cases did there arise a question of a change in the relation of the parent to his child. The right to parental control and discipline was admitted as an excuse for the mere violation of a moral or parental obligation in the absence of malice or abuse. The *Gretakis Case* was specifically distinguished from those in which the father had emancipated the child or assumed a relation different from that of the parent. The relation of master and servant, as developed in the case of *Dunlap* v. *Dunlap, supra,* was recognized. The latter relation is no more distinct from the parental relation than that of common carrier and passenger. In such relations, the parent is

bound by the general obligation which the law imposes upon everyone in his relations to his fellow-man.

In the instant case, the action was brought against the father, in his vocational capacity, as a common carrier, not against the father for the violation of a moral or parental obligation, in the exercise of his parental authority. The injuries were occasioned in the performance of the duties of a common carrier, not in the parental relation. As a common carrier, he owed a fixed duty to persons occupying the status of passengers. For the protection of such passengers, in the event of the violation of his duty, the State required him to carry liability insurance. Can it be that his duties to other passengers are higher than his obligations to his own child, when his interest, her interest and the interest of the State all require the preservation and protection of her rights?

It is true that the issuance of an insurance policy creates no cause of action where no cause of action exists in the absence of insurance. The existence of insurance has no effect upon the merits of the cause of action. The merits of the action depend upon culpability, from whence may arise liability. It is for these reasons that evidence of insurance is not permitted to go before a jury in Virginia. Liability insurance, while it does not, therefore, affect the merits of the cause of action against the insured, does lessen the effect of the liability on the wrongdoer. In considering the third assignment of error, we are not dealing with the cause of action, but with the question of immunity from liability for acts constituting culpability.

In the consideration of the rights and legal status of those who occupy the domestic relation, modern conceptions of justice have made notable changes. The old common law rule, which made the husband master of his wife and her property, has given way to newer views and modern laws which have put women on a parity with men in personal and property rights. The old conception that the family was more interested in the child than the State has given

way to the modern conception that the welfare of the State depends upon the protection of the child.

Dr. Pound, in his Common Law, at page 189, has said: "Recent legislation and judicial decision have changed the whole attitude of the law with respect to dependent members of the household. Courts no longer make the natural rights of parents with respect to children the chief basis of their decisions. The individual interest of the parents, which used to be the one thing regarded, has come to be almost the last thing regarded as compared with the interest of the child and interest of society. In other words, social interests are now chiefly regarded."

■ Where two rules of public policy exist, one founded on judicial pronouncement and the other on statute, the statute should prevail, especially where the statute removes the reason for the existence of the judicial rule. Judicial decisions founded on public policy may be overruled, but statutes creating a public policy must be followed.

■ In *Lusk* v. *Lusk, et al., supra,* and *Dunlap* v. *Dunlap, supra,* recoveries were allowed on the grounds that the torts complained of were committed in each case by a parent in his vocational capacity, and that liability insurance covering tortious acts in such capacity removed all reasons for immunity. Both of these grounds exist in the instant case. In addition, we think that the statutes of this State providing for compulsory insurance indemnity to passengers of a common carrier for damages resulting from the negligent operation of its vehicles, evidence a purpose and policy to afford protection to all such persons from damages arising in tort from the relationship of passenger and carrier.

■ This case presents no questions of fraud or collusion. The plaintiff asks to be treated as we would treat any other person injured while occupying the relation of a passenger to a common carrier. Many substantial reasons favor the granting of such treatment, while the sole reason in support of a rule denying the right fails as a matter of fact under the circumstances of the case. Reason is not only the

life of the law, but the inspiration and glory of the law. As reason is affected by facts and circumstances, so are legal principles based thereon. If that were not so, the elementary and fundamental principle and aim of the law to provide justice and fair dealing would be hopeless of attainment.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

CAMPBELL, C. J., and HOLT, J., dissenting.