Present:  Carrico, C.J., Compton, Stephenson,[1] Hassell, Keenan, and Koontz, JJ., and Poff, Senior Justice

SHARI G. PAVLICK, ADM'X, ETC.

OPINION BY
v.  Record No. 962474        CHIEF JUSTICE HARRY L. CARRICO
September 12, 1997

THOMAS MATTHEW PAVLICK, JR.

FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
John M. Folkes, Judge


The question for decision in this appeal is whether the doctrine of intra-family immunity bars recovery of damages for the death of an unemancipated child as a result of a parent's negligent or intentional act.  The question stems from a motion for judgment filed by Shari G. Pavlick, Administratrix of the Estate of Justin Robert Pavlick, deceased, against the defendant, Thomas Matthew Pavlick, Jr., seeking damages for the wrongful death of the deceased, the infant son of Shari Pavlick and the defendant.

The defendant filed a plea to the motion for judgment asserting that he was "immune from suit under the doctrine of intra-family immunity."  The trial court sustained the plea and dismissed the plaintiff's motion for judgment.  We awarded the plaintiff an appeal.

Justin was born June 24, 1994.  He died August 18, 1994, when less than two months old, allegedly from injuries sustained while in the care and custody of the defendant.  In her two-count motion for judgment, the plaintiff alleged that Justin died as a

_____
[1]Justice Stephenson participated in the hearing and decision of this case prior to the effective date of his retirement on July 1, 1997.

result of the defendant's negligence or, alternatively, that the death resulted from the defendant's intentional act.[2]

In sustaining the plea of immunity, the trial judge noted that there is no Virginia precedent "supporting a denial of the plea." The plaintiff responds on appeal with a request that we abrogate the rule of intra-family immunity completely or, alternatively, that we recognize an exception to the rule allowing recovery for the death of a child resulting from the intentional act of a parent.

Citing numerous out-of-state cases, the plaintiff says that "[c]ourts in the majority of states which have considered the matter in recent years have found that the doctrine of intra-family immunity can not be justified and have abolished parental tort immunity."[3] In abolishing parental immunity, the plaintiff states, courts have rejected the several factors that prompted adoption of intra-family immunity in the first place, viz., "(1) the wish for domestic peace and tranquility; (2) the desire to

---

[2] The defendant states on brief that he has been convicted of second-degree murder as a result of Justin's death and is serving time in the penitentiary.

[3] Hebel v. Hebel, 435 P.2d 8 (Alaska 1967); Streenz v. Streenz, 471 P.2d 282 (Ariz. 1970); Gibson v. Gibson, 479 P.2d 648 (Cal. 1971); Schenk v. Schenk, 241 N.E.2d 12 (Ill. App. Ct. 1968); Rigdon v. Rigdon, 465 S.W.2d 921 (Ky. 1971); Anderson v. Stream, 295 N.W.2d 595 (Minn. 1980); Silesky v. Kelman, 161 N.W.2d 631 (Minn. 1968); Hartman v. Hartman, 821 S.W.2d 852 (Mo. 1991); Briere v. Briere, 224 A.2d 588 (N.H. 1966); France v. A.P.A. Transp. Corp., 267 A.2d 490 (N.J. 1970); Guess v. Gulf Ins. Co., 627 P.2d 869 (N.M. 1981); Gelbman v. Gelbman, 245 N.E.2d 192 (N.Y. 1969); Nuelle v. Wells, 154 N.W.2d 364 (N.D. 1967); Kirchner v. Crystal, 474 N.E.2d 275 (Ohio 1984); Winn v. Gilroy, 681 P.2d 776 (Or. 1984); Falco v. Pados, 282 A.2d 351 (Pa. 1971); Goller v. White, 122 N.W.2d 193 (Wis. 1963).

allow the parent to discipline and control the child; (3) the wish not to allow family resources to be depleted; [and] (4) the wish to avoid possible fraud or collusion."  Quoting <u>Kirchner v. Crystal</u>, 474 N.E.2d 275 (Ohio 1984), the plaintiff asserts that "these rationalizations [are] outdated, highly questionable and unpersuasive."  <u>Id.</u> at 276.

With respect to injuries caused by the intentional acts of a parent, the plaintiff says that "[v]irtually every reported case that has considered [the issue] has held that the bar of intra-family immunity should not apply to such [acts]."[4]  In so holding, the plaintiff states, courts "have recognized that to permit a child to maintain a suit against a parent [for injuries] resulting from an intentional or willful tort is no more disruptive to the family peace and tranquility than depriving the child of the right to bring such a suit."

The defendant argues, on the other hand, that "[t]he doctrine of intra-family/parental immunity is alive and well in Virginia."  There are no cases in Virginia, the defendant states, "which allow suit by a deceased **unemancipated** child's estate against [a] living parent [for the parent's allegedly negligent

---

[4] <u>Brunner v. Hutchinson Div., Lear-Siegler, Inc.</u>, 770 F.Supp. 517 (D.S.D. 1991); <u>Hurst v. Capitell</u>, 539 So.2d 264 (Ala. 1989); <u>Attwood v. Attwood</u>, 633 S.W.2d 366 (Ark. 1982); <u>Emery v. Emery</u>, 289 P.2d 218 (Cal. 1955); <u>Schlessinger v. Schlessinger</u>, 796 P.2d 1385 (Colo. 1990); <u>Wright v. Wright</u>, 70 S.E.2d 152 (Ga. Ct.App. 1952); <u>Nudd v. Matsoukas</u>, 131 N.E.2d 525 (Ill. 1956); <u>Barnes v. Barnes</u>, 603 N.E.2d 1337 (Ind. 1992); <u>Mahnke v. Moore</u>, 77 A.2d 923 (Md. 1951); <u>Doe v. Holt</u>, 418 S.E.2d 511 (N.C. 1992); <u>Cowgill v. Boock</u>, 218 P.2d 445 (Or. 1950); <u>Jenkins v. Snohomish County Pub. Util.</u>, 713 P.2d 79 (Wash. 1986); <u>Courtney v. Courtney</u>, 413 S.E.2d 418 (W.Va. 1991).

or intentional acts,] given the instant circumstances." The defendant asserts that while there are several exceptions to the doctrine in Virginia, none is applicable here.

The considerations prompting the initial adoption of intra-family immunity are still viable, the defendant maintains, especially when, as here, the family includes another child of the parents' marriage. The defendant submits that "[t]o allow one child's cause of action to take assets of the family required to support the entire family unit is certainly cause for disharmony in the family unit, even where the parent responsible for the egregious conduct is no longer an integral part of that unit."

Quoting from Hewellette v. George, 9 So. 885 (Miss. 1891),[5] the defendant maintains that "[t]he state, through its criminal laws, will give the minor child protection from parental violence and wrong-doing, and this is all the child can be heard to demand." Id. at 887. This is sufficient reason, the defendant submits, to forbid a minor child from asserting a civil claim to redress personal injuries suffered at the hands of a parent. Other courts have followed this rationale, the defendant states, "and to this date the majority of states have not completely abrogated the [intra-family immunity] Rule."[6]

---

[5]In the official Mississippi reporter, 68 Miss. 703, the case is styled Hewlett v. George.

[6]In Glaskox v. Glaskox, 614 So.2d 906, 912 (Miss. 1992), Hewellette was overruled but only with respect to injuries suffered by a child in an automobile accident resulting from the negligence of a parent.

Finally, the defendant asserts that there is a strong public policy in Virginia against the complete abrogation of the rule. Accordingly, the defendant concludes, we should refrain from abrogating the rule in the interest of maintaining "parental discipline and control and family harmony."

This Court first considered the doctrine of intra-family immunity in Norfolk Southern R.R. v. Gretakis, 162 Va. 597, 174 S.E. 841 (1934). There, Gretakis's infant daughter was injured as the result of the concurring negligence of her father and a railroad company. The daughter recovered judgment against the railroad company, and the latter sought contribution from the father, who demurred on the ground that "an infant daughter cannot sue her parent and there can be no contribution." Id. at 599, 174 S.E. at 842. The trial court sustained the demurrer. We affirmed, stating that "[a]ccording to the great weight of authority an unemancipated minor child cannot sue his or her parent to recover for personal injuries resulting from an ordinary act of negligence." Id. at 600, 174 S.E. at 842.

We soon recognized an exception to the intra-family immunity rule. In Worrell v. Worrell, 174 Va. 11, 4 S.E.2d 343 (1939), a father owned and operated a bus company as a common carrier, and his daughter was injured while a passenger on one of his buses. She recovered a judgment against him for her injuries, and he sought reversal in this Court on the ground that the daughter, "being an unemancipated minor, could not recover against her father." Id. at 15, 4 S.E.2d at 344. We affirmed, holding that the doctrine of intra-family immunity did not bar the daughter's

recovery because "the action was brought against the father, in his vocational capacity, as a common carrier, not against the father for the violation of a moral or parental obligation, in the exercise of his parental authority." Id. at 27, 4 S.E.2d at 349.

We next considered the intra-family immunity rule in Brumfield v. Brumfield, 194 Va. 577, 74 S.E.2d 170 (1953), involving an action brought by an infant against her father for injuries allegedly resulting from his gross negligence. We noted that "[i]t is well settled . . . that an emancipated infant may maintain a tort action against a parent." Id. at 580, 74 S.E.2d at 173. We held, however, that because the infant in Brumfield was unemancipated, she was precluded from maintaining the action against her father under the rule announced in Gretakis, supra. We said in Brumfield it made no difference in that gross negligence was alleged as the basis for recovery. 194 Va. at 583, 74 S.E.2d at 174.

Later, in Smith v. Kauffman, 212 Va. 181, 183 S.E.2d 190 (1971), this Court abrogated the intra-family immunity rule with respect to "an action by [a] child against [a] parent to recover for injuries sustained in a motor vehicle accident." Id. at 186, 183 S.E.2d at 194. The rationale for our decision was that "[t]he very high incidence of liability insurance covering Virginia-based motor vehicles . . . has made our rule of parental immunity anachronistic when applied to automobile accident litigation [and] the rule can be no longer supported as generally calculated to promote the peace and tranquility of the home and

the advantageous disposal of the parents' exchequer." Id. at 185, 183 S.E.2d at 194.

Finally, in Wright v. Wright, 213 Va. 177, 191 S.E.2d 223 (1972), we considered the question whether an unemancipated child could maintain an action for the simple negligence of her father in failing to provide a safe place for her to play in the yard of the family home. We answered the question in the negative because the injury was not "sustained in [a] motor vehicle accident[]" and "the alleged negligence was incident to the parental relationship of the father with his unemancipated child, and not to a business or vocational relationship." Id. at 179, 191 S.E.2d at 225.

This examination of our prior decisions on the rule of intra-family immunity establishes two propositions. First, the rule is "alive and well in Virginia," as the defendant maintains, at least to the extent it still bars recovery by an unemancipated child against a parent for negligence in a non-automobile or non-business related situation. See Gretakis, Brumfield, and Wright. Second, as the plaintiff observes on brief, "[n]o Virginia case has ever held that the bar of intra-family immunity applies to intentional, wilful, or malicious torts."

This brings us to the question whether we should abrogate the rule of intra-family immunity completely, as the plaintiff requests, refuse to alter the rule in any way, as the defendant urges, or recognize an exception to the rule to allow recovery for injuries to an unemancipated child resulting from the intentional act of a parent, as the plaintiff asks alternatively.

In order to abrogate the rule completely, we would be required to overrule <u>Gretakis</u>, <u>Brumfield</u>, and <u>Wright</u>.  Yet, those decisions were accepted as correct when made, they have been relied upon since by the bench, the bar, and the public, and nothing has occurred, such as the advent of "[t]he very high incidence of liability insurance covering Virginia-based motor vehicles," noted in <u>Smith</u>, 212 Va. at 185, 183 S.E.2d at 194, to make the rule "anachronistic" when applied to non-automobile, non-business litigation.  <u>Id.</u>

Furthermore, we are not satisfied that the considerations which prompted the adoption of the intra-family immunity rule in the first place have become "outdated, highly questionable and unpersuasive"[7] in all instances.  When applied in negligence cases similar to <u>Gretakis</u>, <u>Brumfield</u>, and <u>Wright</u>, the rule may still work to maintain peace and tranquility within the family unit.

The "doctrine of stare decisis is more than a mere cliche" in Virginia; it "plays a significant role in the orderly administration of justice by assuring consistent, predictable, and balanced application of legal principles."  <u>Selected Risks Ins. Co. v. Dean</u>, 233 Va. 260, 265, 355 S.E.2d 579, 581 (1987).  Giving the doctrine full effect, we decline to overrule <u>Gretakis</u>, <u>Brumfield</u>, and <u>Wright,</u> and we deny the plaintiff's request to abrogate the rule of intra-family immunity completely.

We are not inclined, however, to respond favorably to the

_____

[7]<u>Kirchner v. Crystal</u>, 474 N.E.2d 275, 276 (Ohio 1984).

defendant's urging that we refuse to alter the rule in any way. Rather, we think the proper course is to recognize an exception to the rule of intra-family immunity when, as alleged here, a child's death results from the intentional act of a parent.

As noted supra, no Virginia case has ever applied the rule of intra-family immunity to an intentional tort committed by a parent against a child. Therefore, to recognize an exception with respect to an intentional tort by a parent resulting in the death of a child would neither disturb established precedent nor offend principles of stare decisis.

Furthermore, such an exception would be supported by logic and common sense. The factors which prompted adoption of intra-family immunity in the first place are totally irrelevant when considered in the context of the death of a child caused by the intentional act of a parent. Indeed, such an act defeats the very purpose of the immunity rule. Paraphrasing the opinion of the Supreme Court of Oregon in Cowgill v. Boock, 218 P.2d 445 (Or. 1950), it is absurd to talk about maintaining the peace and tranquility of the home when it has already been disrupted by such a monstrous crime as the murder of a child by a parent. Id. at 450. Or, paraphrasing the opinion of the Court of Appeals of Maryland in Mahnke v. Moore, 77 A.2d 923 (Md. 1951), there can be no basis for the contention that a suit against a father for the murder of his child would be contrary to public policy, for the simple reason that there is no home at all in which discipline and tranquility are to be preserved. Id. at 926.

Finally, we do not overlook the defendant's argument based

upon <u>Hewellette v. George</u>, <u>supra</u>, that "[t]he state, through its criminal laws, will give the minor child protection from parental violence and wrong-doing, and this is all the child can be heard to demand."  However, while enforcement of the criminal laws may serve the public interest in protecting children from parental violence, such enforcement does not serve to redress the loss suffered by the survivors of a child whose death results from the intentional act of a parent.  They have the right to demand more.  Furthermore, to allow recovery against the parent here may also serve as a deterrent against similar conduct by other parents.

For these reasons, we refuse to abrogate the rule of intra-family immunity completely.  Accordingly, we will affirm the trial court's judgment to the extent it sustained the plea of intra-family immunity with respect to the defendant's alleged negligence.  However, we will reverse the judgment to the extent it failed to recognize an exception to the rule of intra-family immunity that would have allowed recovery against the defendant for the death of his unemancipated child as a result of his allegedly intentional act, and we will remand the case for further proceedings consistent with the views expressed in this opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>