732 So.2d 1102 (1999)
Frank HERZFELD, Appellant,
v.
Gary HERZFELD, Appellee,
No. 98-362.
District Court of Appeal of Florida, Third District.
February 10, 1999.
*1103 Douglas P. Johnson, and David C. Rash, Fort Lauderdale, for appellant.
Hughes Hubard & Reed, and Sharon L. Kegerreis, Miami, for appellee.
Before JORGENSON, LEVY, and GERSTEN, JJ.
GERSTEN, J.
Frank Herzfeld ("plaintiff") appeals two trial court orders granting his adoptive father's ("defendant") motions to dismiss and for summary judgment on parental immunity grounds. We hold that the parental immunity doctrine does not bar the action by the minor child against his parent for damages arising from sexual abuse, and therefore reverse.
The plaintiff was placed in the defendant's care as a foster child in 1988. The defendant adopted the plaintiff three years later when the plaintiff was sixteen years old. On June 5, 1997, the plaintiff filed a four count civil complaint against the defendant, alleging repeated sexual abuse. The plaintiff alleged intentional torts in counts I through III, and negligence in count IV.
The trial court granted the defendant's motion to dismiss counts I through III on the ground that intentional tort claims are barred by the parental immunity doctrine. After finding that the defendant's insurance policy does not cover the plaintiff's negligence claim, the trial court also found the parental immunity doctrine applicable to count IV and granted the defendant's motion for summary judgment on that count.
The parental immunity doctrine prohibits suits brought by unemancipated minors against their parents. See Orefice v. Albert, 237 So.2d 142 (Fla. 1970). The doctrine was created by the Mississippi Supreme Court in 1891. See Hewlett v. George, 68 Miss. 703, 9 So. 885 (1891). In that case, a woman attempted to sue her mother for wrongfully confining her to an insane asylum when she was a minor. The court held that the daughter's action was barred, reasoning:
The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrong-doing, and this is all the child can be heard to demand.
Hewlett v. George, 9 So. at 885.
The parental immunity doctrine was subsequently adopted in varying degrees by most states.[1] Although some states initially adopted the doctrine as an absolute bar to any action in tort by an unemancipated minor child against a parent, nearly every state has since limited the doctrine's applicability.[2]
*1104 In 1963, Wisconsin became the first state to abrogate the doctrine. See Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193 (1963). The Goller court, however, expressed concern that total abrogation of the doctrine would unduly interfere with parental authority and discipline. See Goller v. White, 122 N.W.2d at 198. In order to prevent such interference, the court abrogated the doctrine in all cases except those involving the exercise of parental authority over a child and/or the exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical, and dental services and other care. Goller v. White, 122 N.W.2d at 198. This approach has been adopted by a number of states, with minor variations.[3]
The American Law Institute subsequently approved of the trend set by Goller and its progeny but took it a step further, recommending that the immunity between parent and child be entirely abrogated. See Restatement (Second) of Torts § 895G (1979). Section 895G of the Restatement states:
(1) A parent or child is not immune from tort liability to the other solely by reason of that relationship.
(2) Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious.
Another notable approach was implemented by the California Supreme Court in Gibson v. Gibson, 3 Cal.3d 914, 92 Cal. Rptr. 288, 479 P.2d 648 (1971). There, the court held that the proper test of a parent's conduct is: "What would an ordinary, reasonable and prudent parent have done under similar circumstances?" See Gibson v. Gibson, 479 P.2d at 653. This approach has been followed in three states.[4]
The remaining states have carved out exceptions to the doctrine in piecemeal fashion. For instance, many refuse to apply the doctrine to intentional tort claims.[5] Others refuse to apply the doctrine to negligence claims involving automobile accidents[6] or where insurance coverage exists.[7] *1105 Florida is among the states which have carved out exceptions in piecemeal fashion.
The Second District Court of Appeal of Florida was the first Florida court to recognize parent-child immunity. See Richard v. Richard, 203 So.2d 7 (Fla. 2d DCA 1967); Meehan v. Meehan, 133 So.2d 776 (Fla. 2d DCA 1961). The doctrine was not recognized by the Florida Supreme Court until 1970. See Orefice v. Albert, 237 So.2d 142 (Fla. 1970). There the Court stated:
It is established policy, evidenced by many decisions, that suits will not be allowed in this state among members of a family unit for tort. Spouses may not sue each other,[8] nor children their parents. The purpose of this policy is to protect family harmony and resources.
Orefice v. Albert, 237 So.2d at 145.
Subsequently, the Supreme Court established Florida's only exception to the parental immunity doctrine. In Ard v. Ard, 414 So.2d 1066 (Fla. 1982), the Court held that, in negligence actions, parental immunity is waived to the extent of the parent's available liability insurance coverage. Where liability insurance exists, the Court determined that "the action between the parent and the child is not truly adversary; both parties seek recovery from the insurance carrier to create a fund for the child's medical care and support without depleting the family's other assets." Ard v. Ard, 414 So.2d at 1068 (quoting Sorensen v. Sorensen, 369 Mass. 350, 339 N.E.2d 907, 914 (1975)).
In creating this exception, the Supreme Court recognized that where insurance coverage exists, the policy reasons justifying the doctrine (preservation of family harmony and resources) are unpersuasive. We find them unpersuasive under the instant facts as well.
Familial discord or dysfunction obviously exists where parental sexual abuse occurs. See Henderson v. Woolley, 230 Conn. 472, 644 A.2d 1303 (1994). Therefore, the desire to preserve family harmony cannot justify immunity under such circumstances. See Henderson v. Woolley, 644 A.2d at 1307; Doe v. Holt, 332 N.C., 90, 418 S.E.2d 511 (1992) ("Where a parent has injured his or her child through a willful and malicious act, any concept of family harmony has been destroyed. Thus, the foremost public purpose supporting the parent-child immunity doctrine is absent, and there is no reason to extend the doctrine's protection to such acts"); Hurst v. Capitell, 539 So.2d 264 (Ala.1989) ("To leave children who are victims of such wrongful, intentional, heinous acts without a right to redress those wrongs in a civil action is unconscionable, especially where the harm to the family fabric has already occurred through that abuse ... [and, thus,] the purpose for that immunity is no longer served").
Furthermore, when a father sexually abuses his son, he subjects himself to criminal charges and provides the state with a basis for terminating his parental rights. Thus, in addition to the mental and emotional familial dysfunction caused by such conduct, family harmony may be destroyed in a very perceptible, and legal, sense by such conduct.
In Waite v. Waite, 618 So.2d 1360 (Fla. 1993), the Supreme Court made a similar observation when it abrogated the interspousal immunity doctrine. There, the Court stated:
we do not believe that the types of lawsuits prohibited by the doctrine of interspousal immunity, if allowed, are likely to foster unwarranted marital discord. Under present law, for example, an abused spouse still might file criminal charges against the abuser, can sue in equity over property interests, and can file for an injunction for protection. We believe that marital disharmony will not be increased merely because of the addition *1106 of a lawsuit for the various types of personal injury at issue here.
Waite v. Waite, 618 So.2d at 1361.
In Waite v. Waite, a woman sued her former husband for damages sustained when the former husband attacked her with a machete. See Waite v. Waite, 618 So.2d at 1360. Here, a child sues his adoptive father for damages arising from sexual abuse. These acts have similar effects on family harmony and, thus, the parental immunity doctrine cannot be justified on family harmony grounds.
We are also unconvinced that the aim of preserving family resources, standing alone, justifies the doctrine. In Richards v. Richards, 599 So.2d 135 (Fla. 5th DCA), rev. dismissed, 604 So.2d 487 (Fla.1992), the Fifth District discussed the need to preserve family resources, stating:
Recovery against a parent by an individual child for an intentional tort, where insurance is not available, decreases the assets available for the support of other family members who may also be in need of assistance.
Richards v. Richards, 599 So.2d at 136. We are compelled to point out, however, that any time a person is sued for actions not covered by liability insurance, his or her family's resources are threatened.
For example, if a parent sexually abuses a child other than his own, that child can certainly sue his or her abuser. In such an instance, it would be no defense for the abuser to assert that he has a family to support; no defense at all. We fail to see why we should concern ourselves with protecting one child abuser's family resources and not another's. Neither deserves protection.
Because we find no valid justification for the parental immunity doctrine where a parent is accused of sexually abusing his or her child, we hold the doctrine inapplicable to suits such as the one presented here. We are cognizant that our position is in direct conflict with that taken by the Fifth District in Richards v. Richards, 599 So.2d at 137. We, however, cannot in good conscience follow this Procrustean[9] precedent. See Henderson v. Woolley, 644 A.2d at 1309 (refusing to follow Richards); Doe v. Holt, 332 N.C. 90, 418 S.E.2d 511 (1992); Hurst v. Capitell, 539 So.2d 264 (Ala. 1989). See also Foldi v. Jeffries, 93 N.J. 533, 461 A.2d 1145 (1983); Felderhoff v. Felderhoff, 473 S.W.2d 928 (Tex. 1971).
The trial court's orders on the defendant's motions to dismiss and for summary judgment are reversed. We certify conflict with Richards v. Richards, 599 So.2d 135 (Fla. 5th DCA 1992).
Reversed; conflict certified.
NOTES
[1] The following jurisdictions either never adopted the parental immunity doctrine or have explicitly refused to recognize the doctrine: District of ColumbiaRousey v. Rousey, 528 A.2d 416 (D.C. 1987); HawaiiPetersen v. City & County of Honolulu, 51 Haw. 484, 462 P.2d 1007 (1969); NevadaRupert v. Stienne, 90 Nev. 397, 528 P.2d 1013 (1974); New HampshireBriere v. Briere, 107 N.H. 432, 224 A.2d 588 (1966); New Mexico Guess v. Gulf Ins. Co., 96 N.M. 27, 627 P.2d 869 (1981); New YorkHolodook v. Spencer, 36 N.Y.2d 35, 364 N.Y.S.2d 859, 324 N.E.2d 338 (1974) (parental immunity doctrine abrogated except in actions alleging negligent parental supervision); North DakotaNuelle v. Wells, 154 N.W.2d 364 (N.D. 1967); Ohio Kirchner v. Crystal, 15 Ohio St.3d 326, 474 N.E.2d 275 (1984); OregonWinn v. Gilroy, 296 Or. 718, 681 P.2d 776 (1984); Pennsylvania Falco v. Pados, 444 Pa. 372, 282 A.2d 351 (1971); South CarolinaElam v. Elam, 275 S.C. 132, 268 S.E.2d 109 (1980); South Dakota (doctrine never addressed); Vermont Wood v. Wood, 135 Vt. 119, 370 A.2d 191 (1977).
[2] Louisiana is currently the only state that continues to grant parents full immunity from tort actions brought by their minor children. See § 9:571, La. Statt. (1997)
[3] See e.g. Cates v. Cates., 156 Ill.2d 76, 189 Ill.Dec. 14, 619 N.E.2d 715 (1993); Wagner v. Smith, 340 N.W.2d 255 (Iowa 1983); Rigdon v. Rigdon, 465 S.W.2d 921 (Ky. 1970); Plumley v. Klein, 388 Mich. 1, 199 N.W.2d 169 (1972); Foldi v. Jeffries, 93 N.J. 533, 461 A.2d 1145 (1983); Broad-well v. Holmes, 871 S.W.2d 471 (Tenn. 1994); Felderhoff v. Felderhoff, 473 S.W.2d 928 (Tex.1971).
[4] See Broadbent v. Broadbent, 184 Ariz. 74, 907 P.2d 43 (1995); Anderson v. Stream, 295 N.W.2d 595 (Minn. 1980); Hartman v. Hartman, 821 S.W.2d 852 (Mo. 1991).
[5] See e.g., Hurst v. Capitell, 539 So.2d 264 (Ala. 1989); Attwood v. Estate of Attwood, 276 Ark. 230, 633 S.W.2d 366 (1982); Schlessinger v. Schlessinger, 796 P.2d 1385 (Colo. 1990); Henderson v. Woolley, 230 Conn. 472, 644 A.2d 1303 (1994); Wright v. Wright, 85 Ga. App. 721, 70 S.E.2d 152 (1952); Nudd v. Matsoukas, 7 Ill.2d 608, 131 N.E.2d 525 (1956); Barnes v. Barnes, 603 N.E.2d 1337 (Ind. 1992); Mahnke v. Moore, 197 Md. 61, 77 A.2d 923 (App. 1951); Pullen v. Novak, 169 Neb. 211, 99 N.W.2d 16 (1959); Foldi v. Jeffries, 93 N.J. 533, 461 A.2d 1145 (1983); Doe v. Holt, 332 N.C. 90, 418 S.E.2d 511 (1992); Sixkiller v. Summers, 680 P.2d 360 (Okla. 1984); Felderhoff v. Felderhoff, 473 S.W.2d 928 (Tex.1971); Elkington v. Foust, 618 P.2d 37 (Utah 1980); Pavlick v. Pavlick, 254 Va. 176, 491 S.E.2d 602 (1997); Jenkins v. Snohomish County Public Utility Dist. No. 1, 105 Wash.2d 99, 713 P.2d 79 (1986); Courtney v. Courtney, 186 W.Va. 597, 413 S.E.2d 418 (1991); Oldman v. Bartshe, 480 P.2d 99 (Wyo. 1971).
[6] See e.g. Hebel v. Hebel, 435 P.2d 8 (Alaska 1967); Williams v. Williams, 369 A.2d 669 (Del. 1976); Nocktonick v. Nocktonick, 227 Kan. 758, 611 P.2d 135 (1980); Black v. Solmitz, 409 A.2d 634 (Me. 1979); Glaskox v. Glaskox, 614 So.2d 906 (Miss. 1992); France v. A.P.A. Transp. Corp., 56 N.J. 500, 267 A.2d 490 (1970); Unah v. Martin, 676 P.2d 1366 (Okla. 1984); Silva v. Silva, 446 A.2d 1013 (R.I. 1982); Jilani v. Jilani, 767 S.W.2d 671 (Tex. 1988); Smith v. Kauffman 212 Va. 181, 183 S.E.2d 190 (1971); Merrick v. Sutterlin, 93 Wash.2d 411, 610 P.2d 891 (1980); Lee v. Comer, 159 W.Va. 585, 224 S.E.2d 721 (1976); Dellapenta v. Dellapenta, 838 P.2d 1153 (Wyo. 1992).
[7] See e.g. Ard v. Ard, 414 So.2d 1066 (Fla. 1982).
[8] The spousal immunity doctrine has since been abrogated. See Waite v. Waite, 618 So.2d 1360 (Fla. 1993).
[9] "Procrustes was a robber of Attica, who placed all who fell into his hands upon an iron bed. If they were longer than the bed, he cut off the redundant part; if shorter he stretched them till they fitted it. Any attempt to reduce men to one standard, one way of thinking, or one way of acting, is called placing them on Procrestes' bed, and the person who makes the attempt is called Procrustes." E. Cobham Brewer, Dictionary of Phrase and Fable 712 (Clamson, Remson, & Haffelfinger, 9th ed. 1875).